No. 44,798

STATE OF KANSAS, *Appellee*, v. JACK LLOYD MCCARTY and JOHN BOYD, *Appellants*.

(427 P. 2d 616)

Opinion filed May 13, 1967.

*Thomas Odell Rost,* of Topeka, argued the cause and was on the brief for the appellants.

*Robert D. Hecht,* County Attorney, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendants, Jack Lloyd McCarty and John Boyd, were jointly tried for robbery in the first degree and both defendants were convicted. After their motion for new trial was overruled, the defendants filed this appeal. In the course of our opinion, we shall refer to the appellants either individually, or as defendants, and to the appellee as the state.

Throughout the trial and the proceedings for a new trial the defendants were represented by Mr. Charles S. Scott of Topeka. On this appeal they are represented by Mr. Thomas Odell Rost, also of Topeka. Both gentlemen are reputable members of the bar of this state.

The state's evidence tended to show the following: Shortly before 2 p.m., Novmber 15, 1965, the defendant, McCarty, wearing an overcoat and a hat, entered a liquor store owned by a Mrs. Barbara Herman located at 1925 Seward Avenue, in Topeka; poking a long gun in her back, McCarty forced Mrs. Herman to the rear of the store and then compelled her to wait on a customer who bought a bottle of liquor with a number of quarters marked with red X's.

As the customer left, Mrs. Herman fled to a pizza parlor next door yelling for help; there, a Mr. Taylor saw McCarty emerge from the liquor store and followed him to a waiting car where McCarty got into the back seat; the car was driven away by a second man whom Taylor identified as Boyd; Taylor followed the car to a bridge over the Kansas river and then returned to the store where he described the car and license number to the police. A check of the liquor store's cash register showed that between seventy-nine and eighty dollars had been taken.

Descriptions of the get-away car and its license number were broadcast and shortly thereafter police officers spotted the car backing up to a tavern in North Topeka. As officers converged on the car, Boyd was apprehended and taken into custody; officers then began looking through the tavern for the second man; upon hearing noises overhead, one of the officers ran upstairs while others ran around to a window in time to see McCarty kick out the pane and jump to the ground, where he was received with open arms by the waiting policemen.

As the officer who went upstairs ran through the rooms, he observed a sawed-off 12-gauge shotgun which he proceeded to pick

up; this gun was loaded with five 16-gauge shells which the officer later took out; both gun and shells were taken to the station along with the defendants.

At police headquarters, McCarty signed a written consent to a search of the living quarters over the tavern; armed with this consent, officers returned to the tavern where they obtained a further consent to the search from Mr. Buggs, the tavern keeper; from their search the officers obtained the overcoat, also referred to as trench coat, and the hat worn by McCarty, a box of 12-gauge shotgun shells, five dollars and fifty cents in quarters, four marked with red X's, and three dollars in dimes, the coins being found under a pillow on the bed. A total of seventy-one dollars was taken from the person of McCarty and six dollars and forty-five cents from Boyd.

No evidence was presented on behalf of the defense.

Four points are raised by the defendants in their brief: (1) physical evidence obtained from the search of the living quarters above the tavern was illegally obtained; (2) a confession given by McCarty was inadmissible; (3) McCarty's statement was erroneously admitted as to Boyd; and (4) the Habitual Criminal Act under which both defendants were sentenced is invalid. We will discuss these points in order.

Turning to point one, the defendants concede the shotgun was correctly admitted, and in this, we agree. The gun was taken in "hot" pursuit of a very "hot" prospect and was clearly admissible in evidence.

What the defendants object to is the admission of items taken from the living quarters above the tavern when the officers returned to search it. It is argued that the search was illegal because McCarty was not advised, before executing his written consent, that evidence obtained from the search could be used against him.

We believe the defendants misconceive the reach of the Fourth Amendment. It was designed to afford a man and his property protection against unreasonable searches and seizures; to insure, for the individual, a sanctum where he and his effects might be free from unjustifiable official intrusion. Speaking on this topic, the federal Supreme Court, in *Hoffa v. United States*, 385 U. S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408, put it this way:

". . . What the Fourth Amendment protects is the security a man relies upon when he places himself or his property within a constitutionally protected area, be it his home or his office, his hotel room or his automobile. There he is

protected from unwarranted governmental intrusion. And when he puts something in his filing cabinet, in his desk drawer, or in his pocket, he has the right to know it will be secure from an unreasonable search or an unreasonable seizure. . . ." (p. 301.)

We deem it clear that the search of the defendants' living quarters in this case was not unreasonable. It was made pursuant to McCarty's express written consent and the oral permission of Buggs, the tavern keeper. There is not the slightest suggestion that deception was practiced or compulsion was employed in obtaining the consent of either man. The evidence shows the consent of both to be voluntary.

McCarty's consent was sufficient as to Boyd, also. The rule appears well settled that where two persons jointly occupy premises, one of them may consent to a search of such premises. (*United States v. Sferas*, 210 F. 2d 69, cert. den., 347 U. S. 935, 98 L. Ed. 1086, 74 S. Ct. 630; *State v. Shephard*, 255 Iowa 1218, 124 N. W. 2d 712; *People v. Guyette*, 231 C. A. 2d 460, 41 Cal. Rptr. 875; *State v. Hall*, 264 N. C. 559, 142 S. E. 2d 177; 79 C. J. S. Searches and Seizures § 62, p. 824.)

Our attention is called to the recent case of *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. Apparently the defendants would have us apply a *Miranda* prerequisite for an admissible confession to a valid consent to a search of private quarters. The defendants cite no authority in support of this contention and our limited research has discovered none.

It is our opinion, however, that the defendant's argument is unsound and must be rejected. *Miranda* deals only with the compulsory self-incrimination barred by the Fifth Amendment, not with the unreasonable search and seizure proscribed by the Fourth Amendment. There is an obvious distinction between the purposes to be served by these two historic sections of the Bill of Rights. The Fifth Amendment prohibits the odious practice of compelling a man to convict himself; the Fourth guards the sanctity of his home and possessions as those terms have been judicially interpreted. An indispensable element of compulsory self-incrimination is some degree of compulsion. The essential component of an unreasonable search and seizure is some sort of unreasonableness.

No responsible court has yet said, to our knowledge, that before a valid voluntary consent to a search can be given, the person consenting must first be warned that whatever is discovered through

the search may be used as evidence against him. We decline to be the first judicial body to expouse so dubious a theory.

The defendants next complain that McCarty's confession was erroneously admitted because he was not warned that anything he said could be used against him. The record is somewhat confused in this respect but we find that when the court inquired of one witness if anyone told McCarty that anything he said might be used against him, the witness replied "I did." This would seem sufficient to dispose of this matter.

We go on to add, however, that the trial judge held a thorough and comprehensive hearing, out of the jury's presence, to determine whether the confession was voluntarily given and, upon a wealth of evidence, concluded that McCarty's statement was freely made. This procedure was in complete accord with the practice in this state. (*State v. Seward,* 163 Kan. 136, 181 P. 2d 478; *State v. Hansen,* 199 Kan. 17, 427 P. 2d 627.) The requirements set forth in *Miranda* are not applicable to the present case, for it was tried prior to that decision. (See *Johnson v. New Jersey,* 385 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772.)

The defendant, Boyd, further complains of the admission of the confession since it incriminates him as well as McCarty. We agree that a statement given by McCarty out of Boyd's presence, and after the crime was consummated, would be inadmissible against Boyd. However, the confession was not admitted against Boyd. The trial court made it very plain, both at the time of admission and in his instructions at the close of the case, that the confession was to be considered only as against McCarty; that the jury must disregard any statements which incriminated Boyd; that nothing in McCarty's confession could be used to convict Boyd; and that if Boyd was to be convicted it must be by other evidence.

It is the prevailing rule that where two or more defendants are jointly tried for the same offense, a declaration made by one may be admitted in evidence as against the maker, provided the court, by proper instructions, limits the application of such statement and makes clear to the jury that a statement made by one defendant may be considered against him only and not against a co-defendant. This principle was recognized long ago in *State v. Johnson,* 40 Kan. 266, 269, 19 Pac. 749.

The Indiana court in *Hansen v. State*, 230 Ind. 635, 106 N. E. 2d 226, defined the rule in this fashion:

"Where several defendants are tried together the confession of one, made in the absence of the other defendants, may be admitted against him if the court instructs or admonishes the jury it is admitted only against the one who made it and is not to be considered as evidence against any of the other defendants who did not join in the statement." (p. 642.)

This case was followed in *Johnson v. State*, 245 Ind. 295, 198 N. E. 2d 373. See, also, *Malcolm, Jr. v. State*, 232 Md. 222, 192 A. 2d 281.

The principle has been applied by federal courts. In *United States v. Gardner*, 347 F. 2d 405 (1965) the court had this to say:

"In a joint trial, incriminating statements made by one defendant which mention another defendant and his conduct are admissible into evidence but only against the declarant. This is also true of a written confession by one defendant which names joint defendants. *Delli Paoli v. United States*, 352 U. S. 232, 237, 77 S. Ct. 294, 1 L. Ed. 2d 278 (1957). Such evidence is hearsay but it is admissible as to the declarant under the admission against interest exception to the hearsay rule. *Id.* at 240, 77 S. Ct. 294. The trial court should be careful at the time of the admission of such evidence and by its instructions make clear to the jury that the evidence is limited to the declarant only and is not to be considered as to other defendants." (pp. 406, 407.)

Boyd contends, however, that the impression created by McCarty's statement could not have been erased from the minds of the jury by instructions. It may be that the possibility of prejudice is always present in this sort of a situation. This was recognized in *State v. Ordog*, 45 N. J. 347; 212 A. 2d 370, cert. den., 384 U. S. 1022, 16 L. Ed. 2d 1025, 86 S. Ct. 1942, where the court said:

"It is indisputable that while the admission of one defendant's confession in a joint trial has the potentiality of prejudice to other defendants implicated by the confession, such statements are, in some circumstances, admissible. . . . Thus, where a joint trial is held and the out-of-court confession of one defendant inculpates the other, the trial court must clearly, promptly and emphatically caution the jury on the limited effect to be given to the confession. *State v. Murray*, 33 N. J. 393, 398 (1960); *State v. Johnson*, 31 N. J. 489, 506 (1960). But even then there may be situations where limiting instructions would be ineffective." (p. 355.)

In examining the question, we are forced to the view that under the facts of this case the jury reasonably could be expected to follow the court's instructions. There were but two defendants here and but one confession. The facts surrounding the crime itself were not complicated or involved. We believe these factors would make it comparatively easy for the jury to recall the limited effect to be given

McCarty's statement and to disassociate references to Boyd from those which incriminated McCarty. (See *State v. Ordog,* supra.)

No good reason appears for believing that the jury disobeyed the court's injunction, twice given, to disregard the statement, as it related to Boyd. Experienced defense counsel had no fault to find with the instructions. The evidence against Boyd, from sources other than McCarty's statement, was persuasive. Under the circumstances disclosed in this case, we cannot say the trial court erred in admitting the confession.

Finally, the defendants would have us declare the Habitual Criminal Act (K. S. A. 21-107a) to be invalid. While acknowledging that this court has upheld the Act on prior occasions, defense counsel earnestly urges us to reconsider our position. The reasons now assigned for voiding the Act have previously been considered and rejected. Our position is adequately set out in *Gladen v. State,* 196 Kan. 586, 413 P. 2d 124, where arguments were advanced similar to those made here. We are satisfied with our holding in *Gladen* and perceive no reason for repeating what was said there.

The judgment of the lower court is affirmed.