[No. 40305. Department Two. July 3, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES LYONS, *Appellant.**

*Richard E. Keefe,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *George T. Mattson,* for respondent.

HILL, J.—James Lyons appeals from a conviction of grand larceny. Currency and a considerable quantity of foodstuffs had been taken from a restaurant known as "Knight's Diner" (Seattle) in the early hours of August 28, 1967.

*Reported in 458 P.2d 30.

The only assignment of error argued[1] is the admission into evidence of currency found at the bottom of a clothes hamper in the defendant's home, and the admission into evidence of photographs of packaged foodstuffs of the kind taken from Knight's Diner and found in the appellant's home.

The contention is that the currency and the foodstuffs were found there as a result of an unlawful search.

Shortly after the burglary of Knight's Diner was reported, the police received a phone call from an anonymous informant who implicated appellant in the burglary.

Unable to secure a search warrant, officers were stationed to keep the appellant's home under surveillance, during which time appellant and another man were seen to enter the house carrying packages.[2]

Twenty to thirty minutes later, Sergeant Arthur W. Conley arrived and he and Officer Joe C. Duty knocked at the door and were admitted by appellant's wife. The appellant was lying on the living room couch apparently asleep when the officers entered. He was "awakened" and advised that he was suspected of having participated in the Knight's Diner burglary, and was asked if the officers might search the house. To this he said "Yes, go ahead." He later signed a statement saying that he had given permission for the search.

The refrigerator was full of foodstuffs similar to those taken from the Diner, some of which were "cartoned commercially not like what the ordinary housewife would buy in a market." In the bathroom, in a clothes hamper, a substantial amount of money in currency and silver was found "down amongst some dirty or wet diapers and clothing."

Appellant was then informed that he was under arrest on

---

[1] Another assignment of error (that the defendant was denied a fair trial for the reason that he was not adequately represented by counsel) was made solely to preserve the defendant's rights, and was not argued.

[2] These packages were later found to contain recently purchased clothing.

suspicion of burglary. Sergeant Conley at that time advised him of his constitutional rights.[3]

■ The pivotal question here is whether the appellant should have been advised of his constitutional rights (as indicated in note 3) before he was asked for consent to search his house.

True, the search revealed the evidence which led to the appellant's arrest and subsequent conviction. However, the Knight's Diner burglary was still in the investigative stage —the appellant was advised that he was a suspect, and with that knowledge gave his consent to the search.

No cases are cited nor have we found any that require officers investigating a crime to preface a request to search premises with a recital to the owner or occupants of their constitutional rights (presently known as the Miranda warnings[4]).

The courts which have had occasion to deal with this issue have with complete unanimity decided it adversely to the appellant's contention.

The Nebraska Supreme Court has squarely held:

> The Miranda procedural requirements for conducting an in-custody interrogation for the purpose of eliciting incriminating statements do not apply to the obtaining of consent to a search under the Fourth Amendment to the Constitution of the United States.

*State v. Forney,* 182 Neb. 802, 157 N.W.2d 403 (1968).

Chief Justice White of that court explains the rationale of that holding as follows (at 804-05):

> The "procedural safeguards" of Miranda are designed to protect against the implied coercion of post arrest or in-custody interrogation and thus, by the terms of the Fifth Amendment, prevent a defendant from de facto becoming a witness against himself. There is no such design or purpose in the Fourth Amendment. It is the

---

[3]He was advised "of his right to counsel, his right to have counsel present during any questioning, his right to remain silent, the fact that if he did speak that anything he said could be used against him, and the fact that if he could not afford counsel the State would provide counsel for him."

[4]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

unreasonable seizure that it condemned, and not any inherent constitutional evil in a defendant's statements. The consent here is asked for and not "required" from the necessary compulsion implied in an in-custody interrogation. Asking for consent negatives independent authority for a search. In-custody interrogation, without the warnings, implies the authority.

The following cases also hold that Miranda requirements do not apply to obtaining consent to a search. *Gorman v. United States*, 380 F. 2d 158 (1st Cir. 1967); *State v. McCarty*, 199 Kan. 116, 427 P.2d 616 (1967); *Morgan v. State*, 2 Md. App. 440, 234 A.2d 762 (1967); *Lamot v. State*, 2 Md. App. 378, 234 A.2d 615 (1967).

The Kansas Supreme Court in the *McCarty* case, says of the argument that the defendant should have been given the Miranda warnings before he was asked for permission to search his living quarters (at 199 Kan. 119-20):

> It is our opinion, however, that the defendant's argument is unsound and must be rejected. *Miranda* deals only with the compulsory self-incrimination barred by the Fifth Amendment, not with the unreasonable search and seizure proscribed by the Fourth Amendment. There is an obvious distinction between the purposes to be served by these two historic sections of the Bill of Rights. The Fifth Amendment prohibits the odious practice of compelling a man to convict himself; the Fourth guards the sanctity of his home and possessions as those terms have been judicially interpreted. An indispensable element of compulsory self-incrimination is some degree of compulsion. The essential component of an unreasonable search and seizure is some sort of unreasonableness.

> No responsible court has yet said, to our knowledge, that before a valid voluntary consent to a search can be given, the person consenting must first be warned that whatever is discovered through the search may be used as evidence against him. We decline to be the first judicial body to espouse so dubious a theory.

The fact that consent to a search would almost certainly result in securing evidence establishing complicity in the Knight's Diner burglary is no reason we should regard the suspect's expression of consent to a search as "coerced." Bowing to events, even if one is not happy with them, is

not the same thing as being coerced. *Robbins v. MacKenzie,* 364 F.2d 45 (1st Cir.), *cert. denied,* 385 U.S. 913, 17 L. Ed. 2d 140, 87 S. Ct. 215 (1966).

The conviction and judgment and sentence predicated thereon are affirmed.

HUNTER, C. J., HALE and NEILL, JJ., and ENNIS, J. Pro Tem., concur.