[No. 7868-0-III. Division Three. March 12, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES
R. NELSON, *Appellant*.

*Robert Gary Ponti* and *McAdams, Ponti & Junke,* for
appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *James L. Nagle, Deputy,* for respondent.

MUNSON, J.—James R. Nelson appeals his conviction for possession of methyl phenobarbital. He contends the trial court erred in failing to suppress evidence discovered by deputies who entered his home after serving him with a warrant of arrest on another charge. We affirm.

The facts are undisputed. On January 11, 1986, Walla Walla Sheriff Deputy Sergeant James R. Romine, Deputies Mike Skeeters and Terry Heisey, and Reserve Deputy Cecil Devries were instructed by Deputy Sergeant James Humphreys to execute an arrest warrant for Mr. Nelson's failure to pay a fine after a misdemeanor conviction. Sergeant Humphreys informed the deputies that Mr. Nelson and his roommates were suspected of dealing drugs, particularly heroin. Because drug dealers are frequently armed, he specifically warned the deputies to proceed with extreme caution.

At approximately 9:30 p.m., Deputies Romine and Skeeters went to the front door of Mr. Nelson's home, while the other two deputies went to the rear of the house to cover any possible exits. When Mr. Nelson answered the door, he was wearing only pants and a T-shirt; the temperature was about 20 degrees. Mr. Nelson stepped out of the house onto the front porch, partially closing the front door behind him. He asked: "What [is this] . . . about?" The two deputies advised him they were there to arrest him on a warrant; they not only showed him the warrant, but read it to him.

Mr. Nelson told the deputies he was willing to go with them, but requested that he first be allowed to obtain his jacket and house keys from inside the house. Deputy Romine advised that because he was under arrest and in custody: "I have to follow you in. We can't let you out of our sight." The deputies also told him that if he did not want them to accompany him inside, they would take him to jail dressed as he was. After hesitating a moment, Mr. Nelson said "okay."

Upon entering the house, the deputies observed marijuana and other drug paraphernalia in the living room. They advised Mr. Nelson of his *Miranda* rights and asked whether he would consent to a further search of the premises. Mr. Nelson agreed, signing a "permission to search" form. A further search revealed marijuana pipes, seeds, scales, a planter containing growing marijuana plants, and six white tablets later identified as methyl phenobarbital.

Mr. Nelson was charged with possession of a controlled substance, methyl phenobarbital, pursuant to RCW 69.50-.401(c). He moved to suppress the evidence found in his house on the basis the deputies' entry was illegal without a search warrant. This motion was denied; he stipulated to facts sufficient for a finding of guilt. The court entered written findings and conclusions, concluding entry into the house was justified; the evidence found therein admissible under the plain view doctrine; and that Mr. Nelson was guilty as charged.

Mr. Nelson, relying primarily on *State v. Chrisman,* 100 Wn.2d 814, 676 P.2d 419 (1984) (*Chrisman* II), asserts that after he was arrested on his front porch, Const. art. 1, § 7 prohibited the deputies from following him into the house without a valid search warrant. He maintains the evidence discovered in the house was inadmissible under the plain view doctrine because the deputies had no prior justification for their warrantless entry.

Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision has been interpreted, like the fourth amendment to the United States Constitution, to require a finding that warrantless searches are impermissible, absent the application of certain narrowly drawn exceptions. *State v. Stroud,* 106 Wn.2d 144, 150, 720 P.2d 436 (1986); *State v. Daugherty,* 94 Wn.2d 263, 266–67, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981). However, Const. art. 1, § 7 has been interpreted to provide greater protections to the privacy rights of Washington citizens than does the Fourth Amendment. *Stroud,* at 148

(and cases cited therein). Thus, although the deputies' accompaniment of Mr. Nelson after his arrest is permitted by the Fourth Amendment, *Washington v. Chrisman,* 455 U.S. 1, 6, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982) and *State v. Wood,* 45 Wn. App. 299, 305, 725 P.2d 435 (1986), the issue remains whether their entry was reasonable when analyzed in light of the heightened protection afforded by Const. art. 1, § 7.

In *Chrisman* II, a campus police officer observed a college student carrying a bottle of gin, apparently in violation of RCW 66.44.270, which prohibits possession of alcoholic beverages by persons under 21. The student appeared under 21 and the officer asked for his identification. Because the student could not produce any, the officer accompanied him to his 11th floor dormitory room to obtain his identification. Once there, the officer stood in the doorway, but did not physically enter the room. From that position, the officer noticed what he believed to be drugs and paraphernalia; he then entered the room, eventually arresting the student's roommate.

 Following denial of a pretrial suppression motion, the roommate was convicted of possessing controlled substances. After several appeals, our Supreme Court in *Chrisman* II reversed, stating at page 820:

> We agree that concerns for safety present legitimate and often compelling reasons for an officer to keep an arrestee in custody. Concern for safety might also allow warrantless entries into a dwelling. Despite the legitimacy of this concern, unlike the federal court, we will not adopt a "bright line" or per se rule. Also, unlike the federal court, we place no importance in [*United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973)], since we already rejected its reasoning in [*State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978)]. We will not find compelling reasons for full custodial arrests and warrantless entries in a vacuum. Rather, the use of these practices can only be permitted under state law when the officer possesses *specific articulable facts* justifying custody and/or entry into a private dwelling.

(Italics ours.) The court continued, at pages 821–22:

> The facts . . . lead to the conclusion that entry into the room was not justified. . . . Neither the officer nor the evidence was threatened. The setting precluded escape. We now hold that the officer's warrantless entry into the dormitory room, following the misdemeanor arrest, was not permitted because the officer was not presented with facts sufficient to demonstrate (1) a threat to the officer's safety, or (2) the possibility of destruction of evidence of the misdemeanor charged, or (3) a strong likelihood of escape. Indeed the fact that the officer did not initially accompany Overdahl into the room shows the absence of any concern for safety or the integrity of the arrest. . . . [W]e think the officer abandoned any claim of reasonableness by allowing Overdahl to enter alone. . . . In this case it is clear that the officer entered the room for the purpose of a search and nothing more. . . . In cases of minor violations, where no danger exists, and where there is no threat of destruction of the evidence, we can find no compelling need to enter a private residence.
>
> In short, under the facts of this case, the first element of the plain view doctrine was not met. There was no prior justification for the intrusion . . .

Unlike the factual situation in *Chrisman* II, once Mr. Nelson was arrested, the deputies were justified in accompanying him into the house as there was the distinct possibility of a threat to their safety. First, they knew the residence was under investigation with respect to drug trafficking; although the deputies testified they had no specific information as to whether Mr. Nelson was armed, all stated in their experience drug dealers frequently carried weapons. Second, Sergeant Humphreys specifically warned the deputies prior to serving the warrant to be very cautious. Third, the deputies had no idea at the time of serving the warrant whether other, perhaps dangerous, individuals were also in the house. Fourth, the deputies were conducting the arrest, not at an 11th floor dormitory room, but at a house and in the dark. Finally, the deputies did not abandon any claim to following Mr. Nelson into the house. He was in their custody; they permitted him to reenter the home.

Under these circumstances, the deputies were aware of sufficient facts to demonstrate the possibility of a threat to their personal safety and were, therefore, justified in escorting Mr. Nelson into his residence to get his jacket per his request. *See Wood,* at 308; *see also State v. Perez,* 41 Wn. App. 481, 486 n.3, 704 P.2d 625 (1985); *State v. Toliver,* 5 Wn. App. 321, 325, 487 P.2d 264 (1971) ("officers have a right to assure their safety"); *United States v. Christophe,* 470 F.2d 865, 869 (2d Cir. 1972); *United States v. Broomfield,* 336 F. Supp. 179, 185 (E.D. Mich. 1972) (officers' warrantless entry permissible where they knew the defendant was involved in drug trafficking, "a violence-prone business").

Notwithstanding, Mr. Nelson argues that under the facts presented here, "there is a strong appearance that the arrest warrant for the minor offense was used as a pretext for entering the home." A search incident to an improper (pretext) arrest is also improper. *State v. Hehman,* 90 Wn.2d 45, 50, 578 P.2d 527 (1978). However, such a contention is unsupported by the record. The deputies testified they did not enter the residence to search for suspected drugs, but rather to simply retain Mr. Nelson in custody. Consequently, the deputies had the right to be in the house; when they inadvertently observed the drugs in plain view, they had the right to seize that evidence. *State v. Daugherty, supra.*

Second, Mr. Nelson contends the entry, after being arrested on his porch, was illegal because he did not voluntarily consent to the deputies' entry into the house. However, lack of consent would not render the deputies' entry unlawful given our decision on the independent ground that entry was justified by concerns for the deputies' safety. *See* 2 W. LaFave, *Search and Seizure* § 6.4, at 421–22 (1978 & Supp. 1986).

Nonetheless, voluntariness of consent is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *State v. Shoemaker,* 85

Wn.2d 207, 211–12, 533 P.2d 123 (1975); *State v. Jensen,* 44 Wn. App. 485, 488, 723 P.2d 443, *review denied,* 107 Wn.2d 1012 (1986). The prosecution bears the burden of demonstrating the consent was voluntary by clear and convincing evidence. *State v. Cole,* 31 Wn. App. 501, 504, 643 P.2d 675 (1982). In examining the totality of the circumstances, the various relevant factors are weighed against one another; no one factor is determinative. *Jensen,* at 488; *State v. Jordan,* 30 Wn. App. 335, 339, 633 P.2d 890, *review denied,* 96 Wn.2d 1017 (1981). Although knowledge of the right to refuse consent is relevant, it is not absolutely necessary. *Jordan,* at 339 (citing *United States v. Watson,* 423 U.S. 411, 46 L. Ed. 2d 598, 96 S. Ct. 820 (1976)). *Miranda* warnings are not a prerequisite to a voluntary consent. *State v. Rodriguez,* 20 Wn. App. 876, 880, 582 P.2d 904 (1978). Merely because an individual is in the custody of officers does not mean that consent is coerced. *Cole,* at 504. Under the circumstances here, it appears Mr. Nelson understood he could have chosen to refuse the deputies' entry, but voluntarily consented anyway; at the suppression hearing, he stated:

A. They told me they'd have to accompany me into the house. I kind of hesitated at that point. I mean, I hesitated, and then I went and said okay, fine, you know. I thought about the circumstances and, you know, what was going to happen. I knew but—there was nothing—you know, I knew it would look crazy for me to walk off without a coat and keys.

Q. *Did you feel you had a choice?*

A. *I thought I did, but it would look crazy.*

(Italics ours.)

Moreover, the circumstances of the arrest indicate he was not threatened implicitly or explicitly into consenting to the entry. Although we recognize Mr. Nelson was faced with a "Hobson's choice" between letting the deputies enter or traveling without a jacket, "[b]owing to events, even if one is not happy with them, is not the same thing as being coerced." *State v. Lyons,* 76 Wn.2d 343, 346–47, 458 P.2d 30 (1969). Given the testimony that he knew he had a

choice, but asked to retrieve his coat and keys anyway, Mr. Nelson's consent to enter into his house supports an independent ground justifying the deputies' entry. *See Giacalone v. Lucas,* 445 F.2d 1238, 1247 (6th Cir. 1971) ("Appellant's decision to walk from the dining room to his bedroom in order to change into more appropriate clothing was voluntary and consensual."), *cert. denied,* 405 U.S. 922 (1972); *State v. Johnson,* 306 So. 2d 724, 728 (La. 1975) (warrantless entry following arrest outside premises upheld where defendant was one who desired to reenter apartment). *Cf. United States v. Whitten,* 706 F.2d 1000, 1016 (9th Cir. 1983) (entry unlawful where defendant arrested outside of hotel room in underwear, but did not request to be allowed to dress until after officers had taken him into the room "without his consent"), *cert. denied,* 465 U.S. 1100 (1984); *United States v. Anthon,* 648 F.2d 669, 675 (10th Cir. 1981) (entry unlawful where defendant arrested outside of room and no indication that he asked to be returned to the room or otherwise consented to such entry), *cert. denied,* 454 U.S. 1164 (1982); *United States v. Kinney,* 638 F.2d 941, 945 (6th Cir.) (no consent to enter where defendant arrested outside of apartment did not request permission to secure additional clothing from inside), *cert. denied,* 452 U.S. 918 (1981).

Finally, JCrR 2.02(c)(1) speaks to the form of a warrant of arrest and states in part: "the warrant shall command that the defendant be arrested and brought forthwith before the judge issuing the warrant." CrR 2.2(c) contains similar language. Thus, the officer effecting the arrest takes the defendant into his custody. The defendant is then not at liberty to do as he pleases, but acts at the direction of the arresting officer.

Here, because of the temperature and the manner in which he was clothed, Mr. Nelson desired to obtain additional clothing. He also wanted his house keys and to secure his animals. He could do this only with the permission of the deputy; the deputy had the right to accompany him once he decided to grant such permission. Mr. Nelson had

the choice either to forgo his desires or to accompany the deputy clothed as he was to the police station. He was so advised and made his choice. There was nothing improper about the deputies entering the residence.

Judgment is affirmed.

THOMPSON, A.C.J., and GREEN, J., concur.