[No. 25771-4-I.  Division One.  July 20, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. MARK LOREN CYRUS, *Appellant.*

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael E. Shaw, Deputy,* for respondent.

FORREST, J. — Mark Loren Cyrus appeals his conviction for second degree assault claiming: (1) the court erred in

denying his motion to suppress on the basis the police unlawfully entered his home, and (2) the court erred by giving an "aggressor" instruction. We disagree and affirm the conviction.

On June 27, 1989, Seattle Police officers Chang and Divine[1] responded to a call of a fight between two men. Both officers were in uniform and both drove marked police vehicles. At the scene the officers spoke to Mr. Opfer, an apparent participant in the fight. Opfer was injured and the officers saw evidence of a broken bottle, confirming the report that one of the participants used a broken bottle as a weapon. Opfer informed the officers that Cyrus had punched him and threatened him with a bottle. Opfer and Cyrus were friends and Opfer offered to take the police to Cyrus's home.

Upon arriving at Cyrus's home, the police approached the front door and knocked. Cyrus opened the door almost immediately. The police informed Cyrus why they were there and asked him to come out to talk. Cyrus was angry and belligerent and refused to come out, instead demanding that the police come in. This happened at least three times in response to both officers. The officers testified that they did not want to enter the house at that time because the interior lights were off and Cyrus's right hand and arm were hidden behind the door. They preferred to have him out on the front porch for officer safety.

After the initial exchanges between Cyrus and the police Mrs. Cyrus, the defendant's mother, came to the door and stood between Cyrus and the police. Mrs. Cyrus was informed of the reason for the police presence. She also became angry. When it became clear Cyrus was not going to come out Officer Chang walked around Mrs. Cyrus, into the house, and grabbed Cyrus's left arm preparing to arrest and cuff him.

Cyrus immediately jerked his arm away and began flailing. At this point Cyrus moved back from the door. Officer

---

[1]The officers were each patrolling alone; Officer Chang was first to respond and Officer Divine arrived moments later.

Divine began moving to help Officer Chang and saw Cyrus's right hand for the first time and saw that he was armed with a revolver. Officer Divine called out a warning that Cyrus was armed. Cyrus pointed the gun at Officer Divine. The two officers and Cyrus began fighting, Officer Chang attempting to control Cyrus and Officer Divine attempting to disarm him. Both officers admitted striking Cyrus to subdue him. Cyrus was ultimately subdued, cuffed and arrested.

At the motion to suppress Cyrus claimed the officers' entry into the home was unlawful. Officers Chang and Divine testified at the hearing as well as Mrs. Cyrus. Mrs. Cyrus denied that her son demanded the officers enter and also disputed much of the officers' version of the fight. Instead she claimed Officer Divine immediately disarmed her son and Officer Chang tackled and beat her son.[2] The court held Cyrus consented to the entry and denied the motion.

At trial Cyrus claimed he acted in self defense. The court, over defense objection, instructed the jury that:

> No person may by any intentional act reasonably likely to provoke a belligerent response create a necessity for acting in self-defense and thereupon use or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Instruction 26.

Cyrus was charged with first degree assault and second degree attempted murder. Cyrus was found guilty of the lesser included offense of second degree assault, with a special verdict finding he was armed with a deadly weapon. Cyrus received a standard range sentence and this appeal followed.

## Issue 1

Did the court err in denying the motion to suppress by finding that the police lawfully entered Cyrus's home?

■■ In reviewing a trial court's findings following a suppression hearing this court should make an independent

---

[2]The police and Mrs. Cyrus repeated these versions of the events at trial.

review of all the evidence, but give great deference to the court's decisions regarding credibility issues since the trial court had the opportunity to evaluate the demeanor of the witnesses.[3] This court should determine if there is substantial evidence[4] to support the findings.[5] Whether consent to enter the home was voluntary, and thus valid, or was, as Cyrus asserts, a product of coercion, " 'is a question of fact to be determined from the totality of all the circumstances.' " *State v. Raines*, 55 Wn. App. 459, 462, 778 P.2d 538 (1989) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973)), *review denied*, 113 Wn.2d 1036 (1990).

In this case the officers testified that Cyrus invited them into the house, but they initially declined for safety reasons. Their concern was reasonable since they had been informed by the victim that Cyrus had two guns in his home. Mrs. Cyrus initially stated she did not "recall" Cyrus asking the officers to come in, but she subsequently denied that an invitation was ever made. The court held the police testimony more credible than Mrs. Cyrus's. The trial court determined that Mrs. Cyrus's testimony was inconsistent with other evidence, illogical, and subject to extreme bias. As the court stated, "her testimony did not have the ring of truth with respect to the physical or psychological evidence available to the Court." The judge also found the officers' testimony was consistent and supported their version of the events. There is substantial evidence in the record supporting all of these conclusions. Our independent review leads to the same conclusion as the trial court: that the officers were invited into the house.

---

[3]*See State v. Mennegar*, 114 Wn.2d 304, 309-10, 787 P.2d 1347 (1990).

[4]" 'Substantial evidence is evidence of sufficient quantum to persuade a fairminded person of the truth of the declared premise.' " *State v. Hagen*, 55 Wn. App. 494, 498, 781 P.2d 892 (1989) (quoting *State v. Hashman*, 46 Wn. App. 211, 217-18, 729 P.2d 651 (1986), *review denied*, 108 Wn.2d 1021 (1987)).

[5]*Hagen*, at 498.

Cyrus contends that even if the court believes he said to the police "You come in" this consent was not voluntary. Cyrus contends any "invitation" was merely the result of his submission to police authority. This claim is totally inconsistent with his behavior in resisting arrest immediately upon their entry culminating in his drawing a gun.

■ In *State v. Raines*,[6] the officers responded to a domestic violence call, knocked on the door and asked permission to enter from the householder answering the door. The householder did not respond, but stepped back out of the door. The court held that "If a householder is in a position to communicate refusal of admittance, and circumstances surrounding the warrantless entry 'are such that [police officers] can reasonably conclude [they are] not being refused entry, then no invitation, express or implied, is necessary to make the [officers'] entry lawful.' " *Raines*, at 462 (quoting *State v. Sabbot*, 16 Wn. App. 929, 937-38, 561 P.2d 212 (1977)). The court held the affirmative act of moving out of the door amounted to more than acquiescence to entry. The court also held the mere presence of the officers and their request did not amount to coercion that would vitiate the consent.[7] In this case the court need not find silent acquiescence since Cyrus not only did not bar the officers' entry but affirmatively invited it.

■ The cases cited by Cyrus in support of his theory that his allowing the officers to enter was a result of submission to police authority are not persuasive.[8] Cases dealing with consent to search after arrest are inapposite as are cases attaching significance to *Miranda* warnings. Nor does Cyrus's intoxication vitiate his consent. Indeed, *United States v. Carter*,[9] relied upon by Cyrus, states that the mere fact the

---

[6]55 Wn. App. 459, 778 P.2d 538 (1989).

[7]*Raines*, at 462.

[8]*State v. Flowers*, 57 Wn. App. 636, 789 P.2d 333, *review denied*, 115 Wn.2d 1009 (1990); *State v. Jones*, 22 Wn. App. 447, 591 P.2d 796 (1979).

[9]854 F.2d 1102, 1106 (8th Cir. 1988).

defendant was intoxicated did not render the consent involuntary. We find no error in the court's denial of the motion to suppress.

### ISSUE 2

Did the court err in giving the "aggressor" instruction?

■ The parties are entitled to jury instructions that, taken as a whole, properly instruct the jury on the applicable law and allow each party the opportunity to argue his or her theory of the case.[10] Cyrus argues that the evidence does not support giving the instruction and that the instruction is an erroneous statement of the law. We disagree.

The jury was entitled to find, as indeed the trial court found in the suppression hearing, that the officers were invited into Cyrus's home. It is undisputed that the officers had probable cause to effect an arrest and used substantial force to subdue and arrest Cyrus. The police testified that Cyrus responded to them in a hostile tone and violently resisted the initial attempts to arrest him. In fact, Cyrus was armed and the police testified that he aimed a gun at them prior to the violent confrontation. The jury was asked to determine if Cyrus was justified in assaulting the police[11] or whether his intentional resistance was reasonably likely to provoke the officers' increased use of force.

■ ■ In light of the self-defense instruction given at Cyrus's request, the State was entitled to an instruction stating that if his intentional actions created the necessity for the officers to use the force they did, he could not assert self-defense as an excuse for his actions. In the absence of an "aggressor" instruction the defendant could argue his resistance was self-defense and the State would have no instruction supporting its theory. Clearly, the facts support an "aggressor" instruction and it was necessary to allow the State to argue its theory of the case. The aggressor instruc-

---

[10]*State v. Hoffman*, 116 Wn.2d 51, 804 P.2d 577 (1991).

[11]Unless an arrestee is threatened with serious bodily injury there is no justification to resist even an unlawful arrest. *See State v. Holeman*, 103 Wn.2d 426, 693 P.2d 89 (1985).

tion is particularly appropriate where there is conflicting testimony as to whether the defendant or victim provoked the altercation.[12]

■ Cyrus's criticisms of the form of the "aggressor" instruction, WPIC 16.04,[13] are based on *State v. Arthur*.[14] We disagree. In *Arthur* the court found the language in the former WPIC 16.04, "[n]o person may by any unlawful act create a necessity", was unconstitutionally vague.[15] The court's concern was that accidental acts could be considered unlawful by the jury and, hence, improperly deprive the defendant of his self-defense argument. The court stated, "The denial of the self-defense theory where the conduct of the defendant could be deemed accidental is not rational, reasonable, or fair." *Arthur*, at 124. The court went on to say that "An aggressor instruction must be directed to intentional acts which the jury could reasonably assume would provoke a belligerent response by the victim." *Arthur*, at 124. The revised WPIC acknowledges this defect and deals with it by specifically incorporating language stating that the acts constituting the defendant's "aggression" must be *intentional*. The instruction does not deprive Cyrus of the self-defense argument. If the jury believed, as his mother testified, that the officers attacked him without provocation, the aggressor instruction would not protect the officers. The

---

[12]*State v. Hughes*, 106 Wn.2d 176, 191-92, 721 P.2d 902 (1986).

[13]"No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self defense [or] [defense or another] and thereupon [kill] [use, offer, or attempt to use force upon or toward] another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense [or] [defense of another] is not available as a defense.

"[One who acts in defense of another, reasonably believing the other to be the innocent party and in danger, is justified in using force necessary to protect that person even if, in fact, the person whom the actor is defending is the aggressor.]" WPIC 16.04.

[14]42 Wn. App. 120, 708 P.2d 1230 (1985).

[15]*Arthur*, 42 Wn. App. at 121.

revised form of WPIC 16.04 given here removes the prior uncertainty and vagueness of "unlawful act", and clearly describes the type of conduct that deprives a defendant of the right to claim self-defense. We find the instruction given to be a correct statement of the law and neither vague nor prejudicial as applied to the facts of this case.

Affirmed.

COLEMAN and THOMPSON, JJ., concur.

Review denied at 120 Wn.2d 1031 (1993).