[No. 28521-1-I.   Division One.   May 3, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. JUSTIN M. MCCROREY, *Appellant.*

*Dennis Lee Burman* and *Carey & Burman,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

GROSSE, J. — The appellant, Justin M. McCrorey, appeals his conviction for taking a motor vehicle without permission, minor in possession of intoxicating liquor, and resisting arrest. McCrorey claims that insufficient evidence supports his convictions for taking a motor vehicle and possessing intoxicating liquor. McCrorey further contends that the arrest that took place in his home was unlawful and violated his rights under the Fourth Amendment and the Washington State Constitution, article 1, section 7. We agree and reverse his conviction.

On December 1, 1990, Justin M. McCrorey, age 17, accompanied his former girlfriend, Adrian Peterson, to his brother's wedding. Testimony at trial indicated that McCrorey

consumed a large amount of alcoholic punch at the following reception, as well as some wine. McCrorey's mother later drove McCrorey and Peterson back to the McCrorey residence and dropped them off.

At the residence, McCrorey and Peterson began to argue. Peterson's current boyfriend, Brennen Norden, arrived to pick her up and parked his truck at the McCrorey residence. McCrorey pursued Peterson outside, where he struck her and threw her on the ground. McCrorey's neighbor passed by in a car and stopped, picking up Peterson and taking her to his home. Norden followed, and the police were notified. After Peterson and Norden's arrival, the neighbor observed Norden's truck driven into a ditch across the street. No one saw the driver of the truck.

The police arrived approximately 30 minutes later. After interviewing the witnesses, the police went to the McCrorey residence. Deputy Wikstrom knocked on the front door; McCrorey answered the door. Wikstrom asked McCrorey to step outside, but McCrorey refused. Wikstrom then asked McCrorey if he could enter the residence to talk to him, but McCrorey again refused, stating that if Wikstrom wanted inside he would have to procure a search warrant. Wikstrom testified he told McCrorey he wanted to get his side of the story. McCrorey stated that he did not want to be arrested. The testimony conflicts as to the exact nature of the colloquy between McCrorey and Wikstrom. McCrorey claimed that Wikstrom promised not to arrest him before he came inside, and Wikstrom testified he made no such agreement.[1] Mc-

---

[1] Deputy Wikstrom's testimony was as follows:

"Q: How many times did he say for you to get a search warrant?

"A: I believe just the — he told me that I couldn't come in without a search warrant. I told him that I would get one if I had to, and he told me he'd like to see me do that. And that was the extent of the talk about the search warrant.

"Q: So when you said you wanted to come in and get his side of the story, that really wasn't true. Was it?

"A: No, it wasn't true.

"Q: You really wanted to get inside to arrest him?

Crorey opened the door and permitted Wikstrom and another deputy to enter.

Once inside, the police noticed a beer can on the table and an odor of alcohol around McCrorey. Wikstrom then informed McCrorey that he was under arrest and asked McCrorey to stand up in order to be handcuffed. McCrorey refused several times and resisted cooperating. After being read his rights, McCrorey confessed to driving Norden's truck and assaulting Peterson.

McCrorey was charged with first degree theft, two counts of fourth degree assault, first degree malicious mischief, taking a motor vehicle without permission, resisting arrest, possessing intoxicating liquor, and driving while intoxicated. The trial court found McCrorey guilty of fourth degree assault, attempted fourth degree assault, taking a motor vehicle without permission, resisting arrest, and possessing intoxicating liquor. McCrorey received a standard range sentence. McCrorey appealed to this court claiming that the arrest was unlawful because his consent was invalid under the state and federal constitutions. McCrorey also contends that insufficient evidence supports the convictions for possessing alcohol and taking a motor vehicle without permission.

■McCrorey asserts that the confession obtained by police is inadmissible because McCrorey's consent was not constitutionally valid; therefore, all evidence flowing from the allegedly illegal entry of the police must be suppressed. *State v. Larson*, 93 Wn.2d 638, 645-46, 611 P.2d 771 (1980). The fourth amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, prevents the police from making a nonconsensual, warrantless

---

"A: Yes, sir.
"Q: Did he say something to the effect that you could come in as long as you didn't arrest him?
"A: Yes, he did.
"Q: And what was your reply to that?
"A: I would not agree to that. I made a statement to the effect well, let me just come in and we'll talk about it. But, I did not commit myself to not placing him under arrest."

entry into a defendant's residence for the purposes of making an arrest. *Payton v. New York*, 445 U.S. 573, 576, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). Entry to effect a warrantless arrest and entry to conduct a warrantless search implicate the same level of constitutional protection. *Payton*, 445 U.S. at 589.

■ Consent within the context of the Fourth Amendment is valid if "voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances". *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973). The Supreme Court rejected a standard that would require Fourth Amendment consent to be a knowing and intelligent waiver, reasoning that Fourth Amendment rights were distinguishable from rights that protect a fair trial.[2]

This voluntary standard of consent has also consistently been applied by the Washington State Supreme Court.[3] McCrorey, however, argues article 1, section 7 of the Washington State Constitution[4] should be interpreted as requiring a "knowing and intelligent waiver" standard to apply to searches and seizures also.

The Washington Constitution provides heightened protection in the area of search and seizure law. *State v. Chrisman*, 100 Wn.2d 814, 818, 676 P.2d 419 (1984); *State v. Stroud*, 106 Wn.2d 144, 148, 720 P.2d 436 (1986). Accord-

---

[2]The waiver concept of consent has its genesis in the United States Supreme Court case of *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 2d 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938).

[3]*See State v. Hastings*, 119 Wn.2d 229, 235, 830 P.2d 658 (1992); *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990); *State v. Cyrus*, 66 Wn. App. 502, 506, 832 P.2d 142 (1992); *State v. Flowers*, 57 Wn. App. 636, 645, 789 P.2d 333, *review denied*, 115 Wn.2d 1009 (1990); *State v. Nelson*, 47 Wn. App. 157, 162, 734 P.2d 516 (1987); *State v. Hashman*, 46 Wn. App. 211, 214, 729 P.2d 651 (1986), *review denied*, 108 Wn.2d 1021 (1987); *State v. Williamson*, 42 Wn. App. 208, 213, 710 P.2d 205 (1985), *review denied*, 105 Wn.2d 1012 (1986).

[4]"No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. 1, § 7.

ingly, the Washington Supreme Court has on occasion declined to follow federal constitutional precedent.[5]

Nevertheless, the Washington Supreme Court has not universally rejected Federal Fourth Amendment analysis. In *State v. Mathe*, 102 Wn.2d 537, 688 P.2d 859 (1984) the court adopted the United States Supreme Court test for common authority consent in search and seizure cases set forth in *United States v. Matlock*, 415 U.S. 164, 171, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974).

■ The issue of whether the state constitution provides greater protection than the federal constitution must be determined under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). McCrorey contends that under *Gunwall*, a waiver standard of consent is required. Because the *Gunwall* court was itself interpreting article 1, section 7, it is not necessary for this court to reanalyze each and every factor.[6] *Seattle v. Yeager*, 67 Wn. App. 41, 834 P.2d 73 (1992). The *Gunwall* analysis of factors 1, 2, 3, and 5 as applied to article 1, section 7 was adopted by the Supreme Court in *State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990). Therefore, we will examine only factors 4 and 6.

Factor 4 examines preexisting state law. McCrorey relies on two pre-*Schneckloth* Washington decisions applying the waiver standard of voluntary and informed consent to warrantless searches: *State v. Greco*, 52 Wn.2d 265, 324 P.2d

---

[5]*See, e.g., State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990) (finding a reasonable expectation of privacy in curbside garbage contra to Supreme Court precedent in *California v. Greenwood*, 486 U.S. 35, 100 L. Ed. 2d 30, 108 S. Ct. 1625 (1988)); *State v. Jackson*, 102 Wn.2d 432, 688 P.2d 136 (1984) (imposing *Aguilar/Spinelli* requirement for establishing probable cause based upon informant's tips, declining to follow *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983)).

[6]*Gunwall* sets forth six factors to determine whether broader protection is available under the Washington Constitution: (1) the text of the state constitution, (2) differences in text between the state and federal constitutions, (3) state constitutional and common law history, (4) preexisting state law, (5) differences in structure between federal and state constitutions, (6) matters of particular state interest or local concern.

1086 (1958); *McNear v. Rhay*, 65 Wn.2d 530, 398 P.2d 732 (1965). The court defined consent as follows:

> The necessity for a search warrant may be waived. . . .
> ". . . [T]he burden of proving there was a truly voluntary and fully informed consent rests upon the Government. Such proof must be made by clear and positive evidence, and it must be established that there was no coercion, actual or implied. The Government must show a consent that is unequivocal and specific, freely and intelligently given. . . ."

(Footnotes and citations omitted.) *State v. Greco*, 52 Wn.2d at 266-67. These cases, however, were interpreting the fourth amendment to the United States Constitution and did not address the Washington Constitution. *Greco* and *McNear* were followed in subsequent Washington decisions analyzing Fourth Amendment consent in terms of waiver. *See, e.g., State v. Smith*, 72 Wn.2d 479, 481, 434 P.2d 5 (1967); *State v. Duarte*, 4 Wn. App. 825, 832, 484 P.2d 1156, *review denied*, 79 Wn.2d 1006 (1971); *State v. Johnson*, 16 Wn. App. 899, 902, 559 P.2d 1380, *review denied*, 89 Wn.2d 1002 (1977).[7] Other decisions cite to *Greco* and *McNear*, but conduct their analysis in terms of voluntariness. *See State v. Rodriguez*, 20 Wn. App. 876, 881, 582 P.2d 904 (1978); *State v. Chakos*, 74 Wn.2d 154, 160, 443 P.2d 815 (1968), *cert. denied sub nom. Christofferson v. Washington*, 393 U.S. 1090, 21 L. Ed. 2d 783, 89 S. Ct. 855 (1969).

Subsequent to the *Schneckloth* decision, the Washington courts adopted the voluntary standard of consent in analyzing Fourth Amendment searches and seizures. *State v. Shoemaker*, 85 Wn.2d 207, 211-12, 533 P.2d 123 (1975). Therefore, although Washington does have precedent utilizing a waiver analysis of the Fourth Amendment prohibition against unreasonable searches and seizures, it is precedent construing federal authority and not our own state constitution. Indeed, the Supreme Court has indicated it may not be willing to go so far.

---

[7]The *Johnson* court, analyzing the warrantless entry under our state constitution, article 1, section 7, appears to have applied a hybrid test; the court speaks in terms of waiving the constitutional right against unreasonable searches and seizures, yet also incorporates the totality of the circumstances analysis set forth in *Schneckloth v. Bustamonte, supra. Johnson*, 16 Wn. App. at 903.

In *State v. Lyons*, 76 Wn.2d 343, 458 P.2d 30 (1969), the court stated that it was not necessary to inform a defendant of his constitutional rights prior to requesting consent to search the defendant's home. *Lyons*, 76 Wn.2d at 345-46. *Accord, State v. Martin*, 2 Wn. App. 904, 909, 472 P.2d 607, *review denied*, 78 Wn.2d 994 (1970), *cert. denied*, 402 U.S. 912 (1971). Moreover, as discussed above, the State Supreme Court has adopted federal analysis on other consent issues within the context of search and seizure law. *See State v. Mathe, supra* (approving the common authority consent analysis set forth in *United States v. Matlock*, 415 U.S. at 171). Consequently, McCrorey's contention that prior Washington decisions demonstrate a knowing and intelligent waiver standard under the state constitution is unpersuasive.

■ The final *Gunwall* factor seeks to ascertain whether the subject matter is local in character and therefore more appropriately addressed by the state constitution. *Gunwall*, 106 Wn.2d at 62. The approach of other state jurisdictions may assist in determining whether a matter is local or national in character. McCrorey, however, has not produced any other authority from another state adopting a *Zerbst* waiver standard for consent based on independent state grounds. *Johnson v. Zerbst*, 304 U.S. 458, 82 L. Ed. 2d 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938). Accordingly, the voluntary analysis of consent within the context of warrantless searches and seizures appears to be uniformly applied at both the federal and state levels, and there is no indication that this is a unique matter of local concern requiring Washington to adopt a different rule.

■■ Consequently, the proper analysis for voluntary consent under article 1, section 7 should be consistent with the federal rule enunciated in *Schneckloth*. The consent must be voluntary and the ensuing search or entry must not exceed the scope of consent. *State v. Hastings*, 119 Wn.2d 229, 234, 830 P.2d 658 (1992). Voluntariness is determined by examining the totality of the circumstances, including whether *Miranda* warnings have been given, the education and intelligence of the consenting person, and whether the consenting person

was informed that consent could be refused. *State v. Smith*, 115 Wn.2d 775, 789, 801 P.2d 975 (1990). In addition, the court may weigh any express or implied claims of police authority to search or enter, previous illegal actions of the police, the defendant's cooperation, and police deception as to identity or purpose. *State v. Flowers*, 57 Wn. App. 636, 645, 789 P.2d 333, *review denied*, 115 Wn.2d 1009 (1990). The fact that a person is aware of his or her right to consent is relevant to that determination, but not dispositive. *State v. Nelson*, 47 Wn. App. 157, 163, 734 P.2d 516 (1987).

McCrorey argues this consent was vitiated because Officer Wikstrom did not disclose his intent to arrest McCrorey before obtaining his consent to enter the residence. McCrorey alleges such police deception will invalidate McCrorey's consent.[8]

This court has previously approved the use of ruse entries in conjunction with undercover police activity. "The use of deception by a police officer does not necessarily affect the voluntariness of a consent to search." *State v. Hashman*, 46 Wn. App. 211, 214, 729 P.2d 651 (1986), *review denied*, 108 Wn.2d 1021 (1987). The *Hashman* court held that if an officer had a "justifiable and reasonable basis to suspect criminal activity", a ruse entry would be allowed.[9] *Hashman*, 46 Wn. App. at 216. That decision appeared to be based

---

[8]Police misrepresentation as to the existence of a warrant may invalidate consent to a Fourth Amendment search or seizure, as the United States Supreme Court noted in *Bumper v. North Carolina*, 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (1968).

[9]The State Supreme Court recently cast doubt on the *Hashman* threshold requirement of a justifiable and reasonable basis for criminal activity in *State v. Hastings*, *supra*. The court in that case did not reach a Fourth Amendment analysis in analyzing an undercover police officer's entry into a residence selling large amounts of rock cocaine. Accordingly, the court did not apply *Hashman*. However, the court made the following observations about *Hashman*:

> Moreover, the threshold requirement set forth in *Hashman* for using a ruse is an unnecessary limitation on undercover police investigations. This court has never utilized such a rule, and the proposed threshold requirement serves no valid purpose.

*Hastings*, 119 Wn.2d at 233.

upon both the Fourth Amendment and article 1, section 7 of the state constitution, the court noting that "[b]oth the United States and Washington Constitutions protect a citizen's privacy interests." *Hashman*, 46 Wn. App. at 213. Several other decisions have upheld the use of undercover ruse entries to obtain consent; *see, e.g.*, *State v. Myers*, 102 Wn.2d 548, 689 P.2d 38 (1984) (allowing officers to gain entry to residence to execute valid search warrant by producing fictitious arrest warrant); *State v. Williamson*, 42 Wn. App. 208, 710 P.2d 205 (1985) (upholding occupant's consent to undercover officer's request to enter a residence, resulting in the arrest of an occupant and search of the residence), *review denied*, 105 Wn.2d 1012 (1986); *State v. Nedergard*, 51 Wn. App. 304, 753 P.2d 526 (upholding consent for entry of officers posing as home buyers), *review denied*, 111 Wn.2d 1007 (1988).

The case at hand is distinguishable, however. It does not present the issue of undercover police activity, but rather the failure to disclose the actual police purpose. The proper focus is not on the asserted purpose for which the officer enters, but on whether the agent's actions are consistent with that purpose, thus falling within the scope of the consent. *Nedergard*, 51 Wn. App. at 311.

We find the Ninth Circuit's approach in *United States v. Bosse*, 898 F.2d 113 (9th Cir. 1990) persuasive. A government agent who gains entry by misrepresenting the scope or purpose of the investigation raises special policy considerations. It is improper for a government agent to gain entry by invoking the occupant's trust, then subsequently betraying that trust. *Bosse*, 898 F.2d at 115 (citing *SEC v. ESM Gov't Sec., Inc.*, 645 F.2d 310, 316 (5th Cir. 1981)). Members of the public should be able to safely rely on the representations of government agents acting in their official capacity. *Bosse*, 898 F.2d at 115. *See also United States v. Briley*, 726 F.2d 1301 (8th Cir. 1984) (similarly drawing a distinction between undercover ruse entries and cases where officers falsely state

the purpose of entry).[10] We conclude that police acting in their official capacity may not actively misrepresent their purpose to gain entry or exceed the scope of consent given.

■ ■ Turning to the instant case, the trial court found that McCrorey had consented to the officer's entry into his home. The State has the burden of proving that a defendant's consent was voluntary by clear and convincing evidence. *State v. Smith*, 115 Wn.2d at 789. When reviewing the trial court's findings, an appellate court must give deference to the trial court's decisions on the issue of credibility of witnesses. The findings will be upheld if they are supported by substantial evidence. *State v. Cyrus*, 66 Wn. App. 502, 506, 832 P.2d 142 (1992). The trial court in its oral opinion found that McCrorey was aware he could refuse to consent, as he initially did refuse consent and told the police to get a warrant. The record indicates that the trial court found Deputy Wikstrom more credible than McCrorey. Accordingly, the trial court did not give any weight to McCrorey's claim that Wikstrom promised not to arrest McCrorey if allowed inside.

However, even deferring to the trial court's judgment on the issue of Wikstrom's credibility, Wikstrom testified that McCrorey expressly stated Wikstrom could enter if Wikstrom would not arrest him. McCrorey's consent to Wikstrom's entry was limited in scope and conditional upon Wikstrom abiding by its terms. Even if Wikstrom did not expressly promise not to arrest McCrorey, McCrorey could easily have

---

[10]Some courts have distinguished circumstances in which the officers gained entry by merely stating they wish to question the occupant as long as it does not amount to deceit or misrepresentation. *People v. Henderson*, 142 Ill. 2d 258, 568 N.E.2d 1234 (1990) (upholding consent of occupant for entry of officers even though officers did not disclose intent to arrest), *cert. denied*, ___ U.S. ___, 116 L. Ed. 2d 189, 112 S. Ct. 233 (1991); *State v. Rodgers*, 119 Wis. 2d 102, 349 N.W.2d 453 (1984) (consent of occupant was valid even though police requested entry for questioning when in fact they immediately arrested another occupant); *Cobb v. Owens*, 492 N.E.2d 19 (Ind. 1986) (upholding consent for entry when officers indicated they wanted to speak to occupant and subsequently arrested occupant in the home). *Cf. McCall v. People*, 623 P.2d 397 (Colo. 1981); *State v. Bailey*, 417 A.2d 915 (R.I. 1980) (disapproving an officer's failure to disclose the purpose for seeking entry).

inferred a promise from Wikstrom's next statement: "Well, let me just come in and we'll talk about it." On the facts of this case, the circumstances indicate that the consent to enter was limited in scope. Wikstrom subsequently exceeded that scope, rendering the consent invalid because of the intended or inadvertent misrepresentation. Wikstrom's entry into the McCrorey home violated the Fourth Amendment.

Consequently, the trial court erred in denying the motion to suppress McCrorey's confession, and the exclusionary rule suppressing evidence obtained in violation of the constitutional prohibition against unreasonable searches and seizures is applicable. *State v. Larson*, 93 Wn.2d 638, 645-46, 611 P.2d 771 (1980); *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Moreover, McCrorey claims that his conviction for resisting arrest should be reversed. An illegal arrest is the equivalent of an assault. *State v. Hornaday*, 105 Wn.2d 120, 131, 713 P.2d 71 (1986). A person being illegally arrested may use reasonable and proportional force to resist the arrest. *Hornaday*, 105 Wn.2d at 131. The evidence indicates that although McCrorey was uncooperative in allowing the officers to handcuff him, he did not use force that was unreasonably aggressive or disproportionate. Consequently, the conviction for resisting arrest should be reversed.

McCrorey also challenges his convictions for possessing intoxicating liquor and taking a motor vehicle without permission. We are unable to review this assignment of error because the trial court below did not provide written findings and conclusions in compliance with JuCR 7.11(d). We are left with an inadequate record on which to review McCrorey's convictions. As in *State v. Witherspoon*, 60 Wn. App. 569, 572, 805 P.2d 248 (1991), the complete lack of findings compels us to reverse and dismiss. Although failure to strictly comply with JuCR 7.11(d) does not lead to automatic reversal, *see State v. Cowgill*, 67 Wn. App. 239, 834 P.2d 677 (1992), the total noncompliance in this case precludes review. In general, dismissal is not appropriate absent a showing of prejudice. *State v. Charlie*, 62 Wn. App.

116

729, 733, 815 P.2d 819 (1991); *State v. Witherspoon*, 60 Wn. App. at 572. The total disregard for procedure in this case creates an appearance of unfairness that compels dismissal. *See State v. Charlie*, 62 Wn. App. at 733; *State v. Witherspoon*, 60 Wn. App. at 572.

We reverse.

FORREST and KENNEDY, JJ., concur.

Review denied at 122 Wn.2d 1013 (1993).