No. 44,441

BERNARD T. GLADEN, *Appellant*, v. STATE OF KANSAS, *Appellee*.

(413 P. 2d 124)

Opinion filed April 9, 1966.

*Arnold M. Mize*, of Derby, argued the cause, and was on the brief for the appellant.

*Tyler C. Lockett*, deputy county attorney, argued the cause, and *Robert C. Londerholm*, attorney general, and *Keith Sanborn*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is an appeal from an order of the district court of Sedgwick county denying appellant's motion, filed under the provisions of K. S. A. 60-1507, to vacate a judgment and sentence. Hereinafter appellant will be referred to as petitioner or Gladen.

Since the facts upon which the disposition of this case turns are not disputed, only those required to dispose of the appeal will be related.

On January 7, 1953, Bernard T. Gladen pleaded guilty in division No. 4 of the above-mentioned court to the charge of second degree burglary and larceny and was placed on probation by the court. Thereafter, on September 6, 1956, he entered a plea of

guilty to the charge of second degree robbery in division No. 5 of said court and was sentenced to the state penitentiary, from which institution he was subsequently paroled. He was represented by counsel at the time of his pleas in both cases. No appeal was taken from either conviction.

On October 9, 1961, Gladen, with his counsel, appeared before division No. 6 of the same court and pleaded guilty to a charge of second degree burglary. After introduction by the state of his two prior felony convictions, petitioner was sentenced under the habitual criminal statute (G. S. 1949, 21-107a, now K. S. A. 21-107a) to the state penitentiary for a period of not less than fifteen years.

Petitioner commenced this action by filing *pro se* his motion to vacate the latter judgment and sentence. He attacked such sentence on two grounds: first, that the convictions used by the state in invoking the habitual criminal act were not "completed" [final adjudications] and, therefore, could not be used to enhance his sentence; second, that the imposition of the act deprived him of equal protection and due process of law under the fourteenth amendment to the United States Constitution.

On June 18, 1965, the trial court held a hearing on petitioner's motion. After reviewing the files and examining the motion, the court found that since no substantial questions of law or triable issues of fact were presented, neither Gladen's presence at the hearing nor appointment of counsel to represent him was necessary; that his sentence was proper; and that the motion to vacate was without merit. The motion was thereupon overruled.

Gladen subsequently filed his notice of appeal. Upon proper showing, he was permitted to proceed in *forma pauperis* and present counsel was appointed.

On appeal, petitioner raises the same two points urged in his motion before the trial court. Counsel, with commendable candor, concedes, and we agree, that Gladen's first point relating to the finality of the prior convictions is utterly devoid of merit; therefore, we will give attention only to the question presented as the second ground of petitioner's motion.

The essence of Gladen's contention is that while the habitual criminal act (K. S. A. 21-107a) is constitutional on its face, the manner in which it is administered renders it unconstitutional as being repugnant to the due process and equal protection clauses of the fourteenth amendment to the United States Constitution.

We note that the constitutionality of the act as it appeared in the Laws of 1927, chapter 191, section 1, was attacked in *State v. Woodman*, 127 Kan. 166, 272 Pac. 132, on the ground of prescribing different punishment for different persons committing the same offense, and the law was upheld. Numerous cases in which the act has been challenged and its constitutionality sustained may be found in 2 Hatcher's Digest, Criminal Law, § 359, and 4 West Kansas Digest, Criminal Law, § 1201.

K. S. A. 21-107a provides as follows:

"Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the penalty of the second conviction; and if convicted a third time of felony, he shall be confined in the penitentiary for a period of not less than fifteen years. Judgment in such cases shall not be given for the increased penalty, unless the court shall find, from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state."

By the wording of the first sentence it becomes the duty of the court to assess the additional penalties, but the second sentence specifically limits imposition to those cases where the court shall find as a fact the former felony convictions.

Is is Gladen's contention that by the use of the terms "every person" and "shall be" the legislature contemplated the statute was to be utilized as a matter of course in every case when an habitual offender, as defined by the act, is sentenced; whereas, in actual practice the act is used only at the discretion of the county attorney. Petitioner points out that two felons, each with identical records of prior convictions, may receive different sentences, depending upon whether or not the county attorney requests that the provisions of the act be invoked and introduces evidence from which the court may make the necessary findings. Gladen contends that such arbitrary and deliberate application of the provisions renders the act unconstitutional.

Basically, the identical question was raised and fully considered in *In re Skinner*, 136 Kan. 879, 18 P. 2d 154. There, the petitioner alleged that judges often fail to make findings of prior convictions when they know, from the admissions of the defendants, or other competent evidence, of such previous convictions, and punishment is assessed without the added penalty. Numerous affidavits were introduced in evidence to support the petitioner's allegations of

discrimination. In finding the petitioner's allegations were insufficient, the court said:

"The exercise of reasonable judicial discretion which results in a discrimination in the application of a law to those of the same class does not necessarily or generally render the law unconstitutional as depriving one of the equal protection of the law.

"The omission or failure of trial judges to make findings of prior conviction or convictions of other defendants under the provisions of the habitual-criminal act (R. S. 1931 Supp. 21-107a) does not in and of itself and without a showing of the discrimination being illegal by reason of its being willful, arbitrary, designed, deliberate, intentional or by concerted action, deprive one in whose case such finding was made of the equal protection of the law or render the law unconstitutional as being in violation of the fourteenth amendment of the United States constitution." (Syl. ¶¶ 1 and 2.)

This court reaffirmed its holding in the *Skinner* case in *Cochran v. Simpson*, 143 Kan. 273, 53 P. 2d 502, where the petitioner urged the habitual criminal act denies equal protection to all offenders in that it allows the exercise of discretion and discrimination between offenders, in violation of the fourteenth amendment to the United States Constitution.

The use of discretion in invoking the provisions of an habitual criminal act was considered by the Supreme Court of the United States in *Oyler v. Boles*, 368 U. S. 448, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962). There, the petitioners were sentenced to life imprisonment under the West Virginia statute which provided for a mandatory life sentence upon the third conviction "of a crime punishable by confinement in a penitentiary." The increased penalty was to be invoked by an information filed by the prosecuting attorney "immediately upon conviction and before sentence." Petitioners contended that the statute imposed a mandatory duty on the prosecuting authorities to seek the more severe penalty against all persons coming within the statutory standards, but that it was done only in a minority of cases. The court noted that no allegation was made that the failure to proceed against other three-time offenders was the result of a deliberate policy of proceeding only in a certain class of cases or against specific persons, and that the allegations set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses, which did not deny equal protection under the fourteenth amendment. The court further stated:

"Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race,

religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. *Oregon v. Hicks*, supra [213 Ore. 619, 325 P. 2d 794 (1958)]; cf. *Snowden v. Hughes*, 321 U. S. 1, [88 L. Ed. 497, 64 S. Ct. 397] (1944); *Yick Wo v. Hopkins*, 118 U. S. 356 [30 L. Ed. 220, 6 S. Ct. 1064] (1886) (by implication)." (p. 456.)

Although factually distinguishable, the rationale of the *Oyler* decision was applied in *Moss v. Hornig*, 314 F. 2d 89 (1963), which was an action brought under the civil rights act by a store proprietor to enjoin a state court prosecution charging violation of the Sunday closing law. Moss alleged an intentional and purposeful discrimination against him as an individual. Testimony was introduced showing that only two persons had been prosecuted in the entire state circuit during a one-year period despite the fact the prosecutor knew of other stores remaining open and yet failed to prosecute the individuals involved. The court, in holding that such facts were insufficient to constitute purposeful discrimination, said:

"Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection. See United States v. Rickenbacker, 309 F. 2d 462 (2 Cir. 1962). To show that unequal administration of a state statute offends the equal protection clause one must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U. S. 1, 8, 64 S. Ct. 397 (1944)." (p. 92.)

In examining Gladen's motion, we have nothing other than the naked allegation that being sentenced under the habitual criminal act deprived him of equal protection and due process. Numerous statements in his brief about what may or may not have happened to other felons with prior convictions, even if properly before us, are insufficient, in light of the foregoing decisions, to render the statute, as administered, unconstitutional. There is a presumption that a public official will act fairly, reasonably and impartially in the performance of the duties of his office. *Lyerla v. Lyerla*, 195 Kan. 259, 403 P. 2d 989; *Sutherland v. Ferguson*, 194 Kan. 35, 397 P. 2d 335; *State v. Emory*, 193 Kan. 52, 391 P. 2d 1013, cert den. 379 U. S. 906, 13 L. Ed. 2d 179, 85 S. Ct. 200.) Petitioner frankly concedes that his sentence pursuant to the act was not imposed on him through any concerted action of the prosecuting officials; moreover, he makes no allegations of illegal discrimination by reason of willful, arbitrary, designed, deliberate, or intentional action on the part of said officials.

Although Gladen asserts the statute also violates the due process

clause, he advances no new argument, nor does he cite authority to support his position.

We adhere to our holding in *Skinner,* and therefore conclude that petitioner has failed to show the habitual criminal act, as administered, violates the due process and equal protection clauses of the fourteenth amendment to the federal constitution. The trial court correctly denied petitioner's motion, and the judgment is affirmed.