(687 P.2d 643)

No. 56,089

STATE OF KANSAS, *Appellee,* v. CLYDE E. WENIGER and BONNIE WENIGER, *Appellants.*

Petition for review denied November 9, 1984.

Opinion filed September 13, 1984.

*S. A. (Tim) Scimeca,* of Wichita, for appellants.

*Byron L. Sloan,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRISCOE, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: The defendants appeal their misdemeanor conviction for failing to screen a junkyard in violation of Sedgwick County Resolution 79-1975.

Defendants contend that the resolution is being enforced against them and no one else, thus it is discriminatory and selective law enforcement in violation of the Fifth and Fourteen Amendments to the United States Constitution; and that the resolution, which adopts by reference Health and Sanitation Code No. 5 of the Wichita-Sedgwick County Department of Community Health, is overbroad and vague and in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

The defendants did not raise the defense of discriminatory and selective law enforcement in a pretrial motion as is required by K.S.A. 22-3208(3), which constituted a waiver of objection. The trial court could have granted relief from the waiver for "cause shown," but the defendants offered no evidence why relief should be granted and the trial court found none. The defendants, by failing to file a pretrial motion addressing the issue, waived their right to raise this issue on appeal.

In any event, the record shows that the health department is gathering evidence preparatory to filing charges against others similarly situated. In addition, this junkyard is the only one for which the health department received citizens' complaints.

Our Supreme Court stated in *State ex rel. Murray v. Palmgren,* 231 Kan. 524, 528-29, 646 P.2d 1091 (1982):

"The discretion whether or not to prosecute has long been the sacred domain of the prosecutor and stems from the common law *nolle prosequi. State v. Greenlee,* 228 Kan. 712, 717, 620 P.2d 1132 (1980). Nevertheless, discriminatory prosecution is now generally recognized to constitute a valid defense to a criminal charge. Annot., 95 A.L.R.3d 280, 296.

"To be successful, a defendant alleging discriminatory prosecution must show: 1) Others who are similarly situated are not generally prosecuted for conduct similar to that for which defendant is being prosecuted, and 2) the defendant has been intentionally and purposefully singled out for prosecution on the basis of an arbitrary or invidious criterion. Annot., 95 A.L.R.3d at 287. See also *Barton v. Malley,* 626 F.2d 151, 155 (10th Cir. 1980). The defense is solidly based on the Equal Protection Clause of the 14th Amendment. See *Yick Wo v. Hopkins,* 118 U.S. 356, 30 L.Ed. 220, 6 S.Ct. 1064 (1886). Mere failure to enforce the law against other violators, however, does not establish a claim of discriminatory prosecution. *Oyler v. Boles,* 368 U.S. 448, 7 L.Ed.2d 446, 82 S.Ct. 501 (1962); *Gladen v. State,* 196 Kan. 586, 590, 413 P.2d 124 (1966)."

The focal point of any discussion of discriminatory enforcement in Kansas is *Gladen v. State,* 196 Kan. 586, 413 P.2d 124 (1966), which cites *Oyler v. Boles,* 368 U.S. 448, 7 L.Ed.2d 446, 82 S.Ct. 501 (1962). Our Supreme Court stated at page 590:

"Although factually distinguishable, the rationale of the *Oyler* decision was applied in *Moss v. Hornig,* 314 F.2d 89 (1963), which was an action brought under the civil rights act by a store proprietor to enjoin a state court prosecution charging violation of the Sunday closing law. Moss alleged an intentional and purposeful discrimination against him as an individual. Testimony was introduced showing that only two persons had been prosecuted in the entire state circuit during a one-year period despite the fact the prosecutor knew of other stores remaining open and yet failed to prosecute the individuals involved. The court, in holding that such facts were insufficient to constitute purposeful discrimination, said:

" 'Mere failure to prosecute other offenders is no basis for a finding of denial of equal protection. See United States v. Rickenbacker, 309 F.2d 462 (2 Cir. 1962). To show that unequal administration of a state statute offends the equal protection clause one must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8, 64 S.Ct. 397 (1944).' (p. 92.)

"In examining Gladen's motion, we have nothing other than the naked allegation that being sentenced under the habitual criminal act deprived him of equal protection and due process. Numerous statements in his brief about what may or may not have happened to other felons with prior convictions, éven if properly before us, are insufficient, in light of the foregoing decisions, to render the statute, as administered, unconstitutional. There is a presumption that a public official will act fairly, reasonably and impartially in the performance of the duties of his office. *Lyerla v. Lyerla,* 195 Kan. 259, 403 P.2d 989; *Sutherland v. Ferguson,* 194 Kan. 35, 397 P.2d 335; *State v. Emory,* 193 Kan. 52, 391 P.2d 1013, cert den. 379 U.S. 906, 13 L.Ed.2d 179, 85 S.Ct. 200."

The *only* evidence adduced at trial as to why these defendants were the first to come to trial was that they were in violation of the ordinance and theirs was the only junkyard for which the department had received citizens' complaints. There is no showing that the selection was deliberately and intentionally based upon an unjustifiable classification such as race, religion, sex or the exercise of the First Amendment right to free speech. *State ex rel. Murray v. Palmgren,* 231 Kan. at 528; *Oyler v. Boles,* 368 U.S. 448; *Gladen v. State,* 196 Kan. at 589; Annot., 95 A.L.R.3d 280, 296. It is apparent from the record that the health department intends to prosecute more cases if this ordinance is upheld.

The defendants next argue that the ordinance and incorporated sanitation code is overbroad and vague. The challenged section reads:

" 'Salvage Yards' shall mean any premises used for: (a) Storage and/or sale or resale of used merchandise; or (b) the disassembly of wrecked or used automobiles for the reuse and/or sale of automobile parts; or (c) the storage and/or sale of various kinds of metal and/or used building materials."

The defendants admitted at trial that they clearly come under section (b) of the challenged definition. Their argument, however, goes to section (a).

A person to whom a statute may constitutionally be applied cannot challenge that statute on the ground that it may conceivably be applied unconstitutionally in situations not before the court. *New York v. Ferber,* 458 U.S. 747, 73 L.Ed.2d 1113, 102 S.Ct. 3348 (1982); *Clements v. Fashing,* 457 U.S. 957, 73 L.Ed.2d 508, 102 S.Ct. 2836, *reh. denied* 458 U.S. 1133 (1982); *Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 71 L.Ed.2d 362, 102 S.Ct. 1186, *reh. denied* 456 U.S. 950 (1982).

The defendants next argue that "site screening" is overly broad and vague. The health code defines site screening as "decorative fencing, evergreen vegetation, or landscaped earth berms maintained for the purpose of concealing from view the area behind such fence, evergreen vegetation or berms. When fencing is used for screening, it shall not be less than six nor more than eight feet in height."

The defendants then argue that persons of common intelligence would have to guess at the meaning of "decorative fencing" and "evergreen vegetation maintained for the purpose of concealing from view," and therefore the ordinance is unconstitutionally vague.

In *Cardella v. City of Overland Park,* 228 Kan. 698, 702, 620 P.2d 1122 (1980), the Supreme Court, adopting the trial court's opinion, stated:

" 'Due process requires that criminal ordinances be reasonably definite as to the persons and conduct within their scope. In determining whether an ordinance is void-for-vagueness two inquiries are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement.

" 'In Kansas the test to determine whether a criminal statute or ordinance is vague or indefinite is whether its language conveys "a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice". *City of Altamont v. Finkle,* 224 Kan. 221, 223, 579 P.2d 712 (1978), as cited in *City of Baxter Springs v. Bryant* [226 Kan.] at 393.

. . . .

" '. . . . Even the terms of a penal ordinance should be read *in pari materia* with the other provisions of the ordinance in order to determine the precise scope of the conduct prohibited. Clearly, the words in a statute or ordinance must be construed in light of their context and the purpose of the enactment. *Natural Gas Pipeline Co. v. Commission of Revenue & Taxation,* 163 Kan. 458, 466, 183 P.2d 234 (1947). . . .

" 'The final aspect of plaintiff's void-for-vagueness argument is that the ordinance creates the possibility of arbitrary and discriminatory enforcement. An ordinance must provide adequate guidelines for and constraints upon those who apply it; judges, juries, and law enforcement officers must have some legally fixed standards by which they may decide what is prohibited and what is not in each particular case. *Smith v. Goguen,* 415 U.S. 566, 39 L.Ed.2d 605, 94 S.Ct. 1242 (1974); and *Papachristou v. City of Jacksonville,* 405 U.S. 156, 31 L.Ed.2d 110, 92 S.Ct. 839 (1972). In the present case the challenged ordinance was very narrowly drawn. It applies only to commercial establishments and to fairly well defined products. It does not "cast a large net" like the imprecise terms of the vagrancy ordinance in *Papachristou* nor does it require the type of vague and subjective judgments similar to the required determination of what constituted "contemptuous" treatment of the flag found in *Smith v. Goguen,* supra. The challenged ordinance does provide the constitutionally required fair warning of what is prohibited and adequate standards by which that conduct may be measured.' " 228 Kan. at 702-03, 705-06.

" 'At its heart the test for vagueness is a commonsense determination of fundamental fairness.' *Kansas City Millwright Co., Inc. v. Kalb,* 221 Kan. 658, 663, 562 P.2d 65, *modified* 221 Kan. 752 (1977)." *State v. Lackey,* 232 Kan. 478, 479-80, 657 P.2d 40 (1983).

An argument similar to these defendants' was found to be without merit in *State v. Jones,* 305 N.C. 520, 290 S.E.2d 675 (1982). In *Jones,* the defendant argued that men of ordinary intelligence could not understand the requirements concerning the screening of junkyards. The North Carolina Supreme Court cited the general rules of law set forth above and then stated: "In our view the ordinance in question when read contextually apprises persons of ordinary intelligence, who desire to know the law and abide by it, what is required by it." 305 N.C. at 531. When read contextually, the ordinance here apprises people that something must be used to "screen" the junkyard from view. The ordinance then lists different types of screens, but the "core" of the ordinance is the *screening* of unsightly junk. See *Smith v. Goguen,* 415 U.S. 566, 39 L.Ed.2d 605, 94 S.Ct. 1242 (1974); *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 29 L.Ed.2d 214, 91 S.Ct. 1686 (1971). The ordinance conveys sufficient warning and fair notice that junkyards must be *screened*

from view, thereby making it clear what the ordinance as a whole prohibits. *Grayned v. City of Rockford,* 408 U.S. 104, 110, 33 L.Ed.2d 222, 92 S.Ct. 2294 (1972).

With this guideline in mind, the term "decorative fencing" obviously would be "most commonly understood" to mean fencing that is more pleasing to the eye than piles of junk. Any fencing that *screens* a junkyard from view would be sufficient unless the fencing itself is composed of "junk." Therefore, the word "decorative" merely limits the word "fencing" which otherwise might include rows or piles of debris more unsightly than the junkyard itself. As is stated in *In re Brooks,* 228 Kan. 541, 544, 618 P.2d 814 (1980):

" 'Mathematical certainty in language is not to be expected in any statute. *Grayned v. City of Rockford,* supra. See also, *Robinson v. United States,* 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945). Flexibility and reasonable breadth, rather than meticulous specificity or great exactitude, in a statute are permissible, so long as its reach is clearly delineated in words of common understanding. *Grayned v. City of Rockford,* supra; *Minor Children of F. B. v. Caruthers,* 323 S.W.2d 397 (Mo. App. 1959). A statute which defines boundaries sufficiently distinct for citizens, policemen, juries and appellate judges is not impermissibly vague. *Grayned v. City of Rockford,* supra. Impossible standards of specificity are not required by the constitution, even in criminal statutes, and a statute meets constitutional muster, if the language used conveys sufficient warning when measured by common understanding and practice. *Jordan v. DeGeorge,* 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951); *United States v. Petrillo,* 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). It is not necessary that all kinds of conduct falling within the reach of the statute be particularized. *City of Chicago v. Fort,* 46 Ill. 2d 12, 262 N.E.2d 473 (1970). A statute is not to be struck down as vague only because marginal cases could be put where doubts might arise. *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). The futility of anticipating and enumerating every means or method a fertile mind might devise that would come within the purview of a statute is obvious. *City of Chicago v. Fort,* supra; *Minor Children of F. B. v. Caruthers,* supra.' "

When measured by the above standards, the ordinance is not unconstitutional for any of the reasons raised by defendants.

Affirmed.