No. 116,763

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROY G. ROBINSON,
*Appellant*.

SYLLABUS BY THE COURT

1.

Selective prosecution, meaning the unfair targeting of someone for criminal prosecution, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and is therefore a valid defense to a criminal charge. To succeed on that defense, the defendant must show that others who are similarly situated are generally not prosecuted for similar conduct and that the defendant has been singled out for prosecution based on arbitrary or invidious criteria.

2.

A selective-prosecution defense must be raised by pretrial motion under K.S.A. 2017 Supp. 22-3208(3) and presents a legal issue for resolution by the court, not a jury issue.

3.

A prosecutor's enforcement classification is arbitrary only if people have been classified according to criteria that are irrelevant to law-enforcement purposes. Here, the defendant had a far more serious criminal history than his codefendant, and that's a

relevant consideration for law-enforcement purposes. So the district court properly denied a motion to dismiss the charge based on a selective-prosecution claim.

4.

When the sufficiency of evidence is challenged in a criminal case, the appellate court looks to see whether the evidence, when viewed in the State's favor, was enough so that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. The court looks at the evidence in the light most favorable to the State because the fact-finder has already found in the State's favor.

5.

Sufficient evidence supported the defendant's conviction in this case.

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed April 6, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and POWELL, JJ.

LEBEN, J.: Roy Robinson appeals his conviction for aggravated burglary, contending that the case against him should have been dismissed for selective prosecution. Robinson contends that the State unfairly targeted him because it didn't proceed with a burglary charge against a second man who had been with him. Robinson also contends that the district court didn't give the jury a full chance to consider his selective-prosecution defense.

But the selective-prosecution defense isn't one for the jury to decide, anyway: It has nothing to do with whether a defendant is guilty, which is what the jury determines. And the district court's refusal to dismiss the charge against Robinson based on selective prosecution was appropriate because there were reasons other than some arbitrary or invidious criteria to proceed against Robinson. Robinson had a more serious criminal record and the victim had testified at a preliminary hearing that Robinson, not the other man, had been the one who asked for the property that he had intended to steal.

Robinson also argues briefly that the evidence wasn't sufficient to show that he entered the home without authority or intended to commit a theft when he came in. But the resident said she didn't invite him in or want him there. And Robinson came to the home at a time when its residents would have been expected to have been at work, which suggested that he entered the home to take something, not to drop by for a visit. So the evidence was sufficient on these challenged points. We affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The events at issue unfolded at the Larned, Kansas, residence of Wayne Steen, Jakeeia Chambers, and her four children. (Steen is the father of the youngest child, who was four.) On a normal weekday, Chambers left before 6 a.m. to get to work, though she typically returned briefly around 7:30 a.m. to take three of the children to school, Steen to work, and the youngest child to her father's house. She would then normally return to her employment.

But she had stayed home from work this Monday morning because she hadn't felt well. By 8 o'clock, Steen had taken their only car to work; the older children were in school; and the youngest child was with Chambers' father. So Chambers was home alone. While she was fixing breakfast for herself in the kitchen, she "heard a big bang" from her

3

back door. She then found two men—Robinson and Derek Devine—standing inside her home.

She recognized Robinson as an acquaintance of Steen's who had visited the home before. She didn't know Devine.

Chambers said the men seemed surprised when they saw her, and she asked them to leave. Instead, she said, they told her "to give them TVs, and money, and computers." She said the men told her that Steen owed them money. The men did not specify a particular television or computer that they wanted.

Chambers said she told the men to leave. She then retreated to her bedroom and called Steen. At least one of the men followed. After that call, she again told the men to leave—and they did. They didn't take any property with them. Chambers then called the police.

The State at first charged both Robinson and Devine with aggravated burglary. In Devine's case, though, the State amended the charge against Devine from aggravated burglary, a felony, to criminal trespass, a misdemeanor. At the hearing at which the charge was reduced, a prosecutor said that he didn't think there was enough evidence to show that Devine intended to commit a theft inside the residence.

But the State did not reduce the charge against Robinson. So he filed a pretrial motion to dismiss the case, claiming selective prosecution. The district court denied the motion, concluding that the evidence presented in Robinson's case was sufficient to proceed and that "there may be dissimilar circumstances" between Robinson and Devine.

In a jury trial, Robinson presented two lines of defense. First, he said that he came to collect a debt—not to commit a theft. Second, he argued that the State was unfairly

4

picking on him since it didn't pursue the same charge against Devine. The jury convicted Robinson, and he has appealed to our court.

ANALYSIS

I. *Robinson Has Not Shown Error in the District Court's Refusal to Dismiss the Charge Against Him Based on His Selective-Prosecution Claim.*

Robinson mainly argues on appeal that the State unfairly singled him out for prosecution. He's right that it's a defense to a criminal prosecution that the State has unfairly targeted someone for criminal prosecution. Doing so violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *State ex rel. Murray v. Palmgren*, 231 Kan. 524, Syl. ¶ 1, 646 P.2d 1091 (1982). To succeed on that defense, the defendant must show "that others who are similarly situated are generally not prosecuted for conduct similar to the conduct for which the defendant is being prosecuted and that the defendant has been intentionally and purposefully singled out for prosecution on the basis of arbitrary or invidious criteria." *State v. Gant*, 288 Kan. 76, 85, 201 P.3d 673 (2009).

The selective-prosecution defense must be raised by pretrial motion under K.S.A. 22-3208(3). *State v. Weniger*, 9 Kan. App. 2d 705, Syl. ¶ 1, 687 P.2d 643 (1984). Robinson did so.

And at a hearing before trial, the district court denied the motion, saying that "there may be dissimilar circumstances" between Robinson and the man who was with him, Devine. When Robinson renewed his motion after trial—asking that the district court grant an acquittal, setting aside the jury's conviction—the district court said that there were "differences" between Robinson and Devine, "[m]ost notably" Robinson's greater list of past offenses. The court also noted Robinson's "recent involvement" in

5

criminal cases in which he hadn't successfully completed probation. When sentencing the defendant, the district court noted that Robinson's probation had been revoked—and he had been sent to prison—in other cases because he had not complied with probation requirements, "usually" by failing to report as required.

On appeal, Robinson has raised two arguments about selective prosecution. First, he argues that the district court should have granted his motion to dismiss the charge. Second, he argues that the jury instructions didn't accurately tell the jury how to consider his selective-prosecution defense. We will first look at whether the district court had a sufficient basis for its ruling.

The State cites two bases for its decision to proceed against Robinson: (1) that Robinson had a greater role in the crime and (2) that Robinson had many more prior convictions than Devine did. Either would be enough to support the district court's ruling.

The district court's pretrial denial of Robinson's motion came after a preliminary hearing. The only witness was Chambers, who said that Robinson was the one who said, "I need your TVs and computers" while also saying that Steen "owes me." She said that Devine also said "he owes me," but she reported that Robinson was the one who followed her to her bedroom. And she said Robinson "kept saying [Steen] owes me." She also explained that Robinson had been to the home before to see Steen but she had never seen Devine before. This testimony suggested that Robinson had had a greater role in the offense.

At trial, her testimony was somewhat different. This time, she simply attributed the statements made to her to both men: "[T]hey told me to give them TVs, and money, and computers." In denying the posttrial motion about selective prosecution, though, the district court still said that Chambers' trial testimony "focused upon Mr. Robinson's activities on the date in question more so than Mr. Devine's."

6

Even with the less-specific statements at trial about who first told Chambers to hand over the TVs and computers, the court's conclusion that her testimony focused on Robinson as the primary actor may still be a fair one. Robinson was the one who followed Chambers to her room, and Robinson was the one who knew Steen. Robinson's attorney argued to the jury that this was just an "attempt to collect a debt," and it would have made more sense that the debt was owed to Robinson, who knew Steen, than to Devine, who didn't.

But even if the evidence didn't show a difference in what Robinson and Devine each did in committing this crime, the difference in their criminal records would still serve as a sufficient basis to prosecute Robinson more severely than Devine. Robinson's presentence-investigation report shows 32 prior convictions, including domestic battery, violation of a protection-from-abuse order, attempted criminal threat, and nonresidential burglary. And six of the offenses occurred in the same community within five years of the crime charged here.

Our record doesn't contain Devine's criminal-history record. But Robinson makes no argument on appeal that the district court was wrong to conclude there was "a substantial difference" in the criminal records of the two men.

As we've already noted, to show *unlawful* selective prosecution, Robinson must prove that the State has singled him out based on some arbitrary or invidious criteria. See *Gant*, 288 Kan. at 85; *Weniger*, 9 Kan. App. 2d at 707; 4 LaFave, Israel, King & Kerr, Crim. Proc. § 13.4(c) (4th ed. 2015) . By invidious, we generally mean that the State has discriminated based on some improper characteristic, such as race, religion, national origin, or sex. See *Owen v. Wainwright*, 806 F.2d 1519, 1523 (11th Cir. 1986); *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974). As for arbitrariness, "a prosecutor's enforcement classification is 'arbitrary' only if 'people have been classified according to criteria which are clearly irrelevant to law enforcement purposes.'" 4 LaFave, Israel, King

7

& Kerr, Crim. Proc. § 13.4(c) (quoting Givelber, *The Application of Equal Protection Principles to Selective Enforcement of the Criminal Law*, 1973 U. Ill. L.F. 88, 110 [1973]).

Throwing the book at someone who has a long criminal record—while giving a break to someone who doesn't—is reasonable from a law-enforcement perspective. And Robinson hasn't claimed invidious discrimination. So the district court's denial of Robinson's motion is supported in our record.

In addition to challenging the district court's ruling, Robinson also argued that the legal instructions given to the jury didn't sufficiently let it consider his selective-prosecution defense. But that defense should have never been presented to the jury, anyway, so any error in the instructions was harmless.

The selective-prosecution defense is properly raised—as Robinson initially did—through a pretrial motion. See K.S.A. 2017 Supp. 22-3208(3); *Weniger*, 9 Kan. App. 2d 705, Syl. ¶ 1. That's because the question is a legal one about whether the State's prosecution is being pursued in violation of the defendant's constitutional rights, and K.S.A. 2017 Supp. 22-3208(3) requires that any defense "based on defects in the institution of the prosecution" be made by motion. And that's exactly what a selective-prosecution claim is—a claim of defect in the institution of the prosecution. *United States v. Regan*, 103 F.3d 1072, 1082 (2d Cir. 1997). And because this legal matter isn't related to the factual question of whether the defendant committed the offense, it's decided by the judge on a motion, not by the jury. *United States v. Machorro-Xochicale*, 840 F.3d 545, 550 (8th Cir. 2016); *Regan*, 103 F.3d at 1082. The jury decides factual questions, not legal ones. See *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016); *Murray*, 231 Kan. at 528.

In denying the defendant's posttrial motion for acquittal based on selective prosecution, the district court said that it allowed Robinson "to fully pursue that theory [at trial] because a record had to be made in order to present that defense." The court was wrong on that point; any record on this defense should have been made outside the jury's presence since the issue wasn't for the jury to decide.

But even though the selective-prosecution defense was wrongly presented to the jury, the jury rejected it. Because Robinson had no right to present the issue to the jury at all, Robinson's complaint about the instructions the court gave on that issue—even if true—can only amount to a complaint about harmless error that had no effect on the verdict. See K.S.A. 2017 Supp. 60-261; *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011). Robinson has not claimed on appeal that the court's instruction on the selective-prosecution defense had any impact on the jury's consideration of his actual guilt or innocence, so an error in that instruction couldn't have affected the trial's outcome.

II. *Robinson Has Not Shown that the Evidence Was Insufficient to Convict Him for Aggravated Burglary.*

Robinson also argues that the evidence wasn't sufficient to convict him. The court instructed the jury that the State had to prove five things:

1. Robinson entered a dwelling.
2. Robinson did so without authority.
3. Robinson did so with the intent to commit a theft.
4. When Robinson entered, someone was in the dwelling.
5. This took place on or about December 8, 2014, in Pawnee County, Kansas.

9

On appeal, Robinson argues only that the State failed to prove the second and third points, that he entered without authority and did so intending to commit a theft.

When a defendant challenges the sufficiency of evidence in a criminal case, we look to see whether the evidence, when viewed in the State's favor, was enough so that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Robinson*, 306 Kan. 1012, 1022-23, 399 P.3d 194 (2017). We look at the evidence in the light most favorable to the State because the fact-finder (here, a jury) has already found in the State's favor. Our job on appeal, of course, is not to reweigh the evidence; we simply decide whether it was enough to support the fact-finder's conclusion. 306 Kan. at 1022-23.

Chambers' testimony directly supported the conclusion that Robinson entered her home without authority. She said she heard a big bang before finding Robinson and Devine in her home. And she said she didn't give them permission to come in or hear anyone knock or announce their presence before she found them in the kitchen.

Chambers' testimony and other evidence provided circumstantial support for the conclusion that Robinson intended to steal property items when he entered her home:

- The State presented evidence that Robinson most likely thought no one would be at home when he came there. It was a time when Chambers and Steen were ordinarily both at work; she was home only because she had felt sick that morning. And the State presented evidence that no car was parked in the driveway, making it appear likely to a person approaching the residence that no one was home.
- Robinson entered the home without knocking or announcing his presence, also suggesting he thought no one was there.

10

- After finding Chambers in the kitchen, Robinson asked for several items of property. Though he claimed Steen owed him money, Steen testified and denied that.
- Had Robinson wanted to contact Steen about the debt, Steen worked only a short distance from the home and Robinson had come to Steen's workplace to see him before.

So while Robinson's attorney argued at trial that he was merely trying to collect a debt, Robinson didn't testify and no evidence verified the existence of a debt from Steen to Robinson. Robinson entered the home without permission at a time when it would have appeared no one was at home—and Robinson knew where to find Steen had he wanted to talk to Steen about a debt. The State presented enough evidence for the jury to conclude, beyond a reasonable doubt, that Robinson entered the home intending to commit a theft.

We affirm the district court's judgment.