NOT DESIGNATED FOR PUBLICATION

No. 123,049

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROBERT P. WASHINGTON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed July 16, 2021. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Todd G. Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., WARNER and HURST, JJ.

PER CURIAM: Robert P. Washington appeals the district court's denial of his K.S.A. 60-1507 motion. In 2014, a jury convicted Washington of traffic in contraband in a correctional institution. Washington filed a K.S.A. 60-1507 motion alleging that his trial counsel was ineffective for many reasons, and the district court denied the motion after holding an evidentiary hearing. Washington's only claim on appeal is that his trial counsel was ineffective for failing to investigate and pursue Washington's claim of selective prosecution. After thoroughly reviewing the record and the arguments made by the parties, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

The facts of Washington's criminal case are set forth in *State v. Washington*, No. 115,225, 2017 WL 2304451, at *1 (Kan. App. 2017) (unpublished opinion):

"Cell phones are contraband in prison. An informant told Tomas Zamora, a special agent investigator at Lansing Correctional Facility, about a possible cell phone in one of the inmates' cells. Zamora ordered Anthony McCurrie and Bryan Gill, two members of a special security unit known as Shakedown, to search Washington's cell. McCurrie and Gill did not know what they were looking for or why the cell was targeted.

"When the officers reached Washington's pod, which is a central area surrounded by inmates' cells, McCurrie observed Washington exiting his cell. The cell has a bunk bed, and each bunk has a flat, desk-style attachment where inmates put things. McCurrie began his search by looking around the top bunk. On the desk attached to the top bunk, McCurrie found a television, mail, and a stack of books. Underneath the pile of books McCurrie found a cell phone. The mail had Washington's name and inmate number on it, so McCurrie identified the bunk as Washington's. Washington's name was on the top of the nameplate outside of the cell, which also indicated that the top bunk was his. McCurrie bagged the cell phone and took it to the prison's investigation team.

"In August 2014, the State charged Washington with traffic in contraband in a correctional institution, a severity level 6 nonperson felony. At trial, Washington denied that the bunk, television, books, mail, and cell phone were his. Washington and his cellmate testified that they would switch bunks occasionally, even though switching violated prison rules. Evidence showed that the television was not owned by Washington or his cellmate. Washington also presented evidence that, a little over a year before the search, all but three of his books had been confiscated. He argued that the books covering the cell phone could not have been his. Washington denied leaving his mail out on the desk because 'it often happens that people steal people's letters and they write your family members or people you know, and that creates problems.' The officers did not photograph the cell or check the books to verify they were Washington's.

"The jury found Washington guilty of traffic in contraband in a correctional institution. Due to his criminal history score of B, the district court sentenced Washington to serve an additional 39 months in prison."

Washington's direct appeal challenged the sufficiency of the evidence to support his conviction. After reviewing the record, this court affirmed the district court's judgment. 2017 WL 2304451, at *3. Our Supreme Court denied Washington's petition for review, and a mandate was issued on November 7, 2017.

On January 29, 2018, Washington filed a pro se K.S.A. 60-1507 motion alleging four ineffective assistance of counsel claims against his trial counsel, James Colgan. Of relevance to this appeal, Washington argued Colgan was ineffective for failing to raise an equal protection claim alleging Washington was selectively prosecuted. The district court appointed counsel to represent Washington in the K.S.A. 60-1507 proceedings, and counsel filed a supplemental memorandum specifically alleging Colgan was ineffective for failing to assert the selective prosecution claim in his motion for a downward durational sentencing departure.

The district court held an evidentiary hearing on August 28, 2018. Washington testified he believed he had been selectively prosecuted because "several inmates that [he] knew" were not prosecuted for possessing cell phones and he was prosecuted because he "had less than five to eight years left" on his sentence. Although Washington testified inmates are not regularly prosecuted for possessing cell phones, he conceded there have been "plenty" of others who were prosecuted.

Colgan also testified at the evidentiary hearing. When questioned about whether he investigated Washington's selective prosecution claim, Colgan testified he did not "know how you would ever answer that question . . . unless you did a complete audit of everything they do in the prison." When asked about his understanding of which contraband cases Lansing chooses to turn over for prosecution, Colgan stated that "I don't know why certain cases would come up or not come up. I think it's probably their determination of whether or not the evidence is—is strong or sufficient."

3

On June 28, 2019, the district court issued a memorandum decision denying Washington's K.S.A. 60-1507 motion. As for the claim about selective prosecution, the district court found that Washington "failed to prove that selective prosecution occurred in this case" and that Washington did not show he would have received a lesser sentence had a selective prosecution claim been included in his departure motion. Washington appealed the district court's judgment.

DID THE DISTRICT COURT ERR IN DENYING WASHINGTON'S K.S.A. 60-1507 MOTION?

On appeal, Washington claims the district court erred in denying his K.S.A. 60-1507 motion. More specifically, Washington argues that his "equal protection/selective prosecution claim was waived by [Colgan's] inaction in pretrial proceedings without conducting any investigation into its viability, resulting in prejudice." Washington's other claims about Colgan's alleged ineffective representation that were in his motion and argued at the evidentiary hearing are not renewed on appeal. An issue not briefed is deemed waived or abandoned. *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

The State contends the district court properly denied Washington's K.S.A. 60-1507 motion "due to a lack of viability in the selective prosecution claim." The State also argues that Washington failed to show he was prejudiced by Colgan's alleged inaction.

When the trial court conducts an evidentiary hearing on claims of ineffective assistance of counsel, an appellate court reviews the trial court's factual findings using a substantial competent evidence standard. The appellate court reviews the trial court's legal conclusions based on those facts applying a de novo standard of review. *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

To begin with, we observe that Washington's argument on appeal differs from what was argued at the evidentiary hearing in district court. Below, Washington claimed

4

Colgan was ineffective for failing to argue selective prosecution at sentencing to support his motion for a downward departure. On appeal, Washington claims Colgan was ineffective for failing to argue selective prosecution as a complete defense to the charge. But we note that Washington's original motion asserted that he "expressed to trial counsel his desire to get the charges dismissed based upon . . . selective prosecution." Based on this assertion, we find that Washington sufficiently preserved this issue for appeal.

Washington argues Colgan's performance was ineffective because "selective prosecution is a valid defense under the Equal Protection Clause" and "abandoning a viable constitutional defense without any investigation—or thought process eliminating the need for such an investigation—falls below the standard of reasonableness."

"To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984])." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the defendant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Washington's argument rests on Colgan's testimony from the evidentiary hearing, where Washington's counsel briefly questioned Colgan about his investigation of the selective prosecution claim:

"[WASHINGTON'S COUNSEL:] Are—are you—are you aware of any case law that suggests that the prison selectively prosecuting can be the basis for a downward departure?

"[COLGAN:] Well, I think, you know, we've discussed that in the past, I guess, that there are decisions made in the prison to determine who goes up for prosecution. I don't know how you would ever answer that question you did—unless you did a complete audit of everything they do in the prison.

"I know that there was a case here that has caused the county attorney quite a bit of trouble because inmates found out about it, and, of course, it spreads like wildfire, and as a case he dismissed against a prisoner who was under a life sentence. It was kind of a—and I think in the judgment of the county attorney, it was a waste of time to go to trial; it was a waste of time to spend resources and time when the guy wasn't ever gonna get out of the jail. And there was a contraband issue on that, but it was dismissed.

"Now that—we know that went around the prison because I had at least two clients tell me about it, and they wondered why this guy was getting special treatment. Well, the special treatment, like the determinations made at Lansing, I don't know why certain cases would come up or not come up. I think it's probably their determination of whether or not the evidence is—is strong or sufficient, is the way they make that decision. I'm sure there's some cases where they say, well, you know, we really—we really don't have much here. Even though a phone might be found, it'd be hard to pin it to one person or another.

"[WASHINGTON'S COUNSEL:] So you—you're saying that you just didn't feel it to be proper to investigate that area? Unnecessary?

"[COLGAN:] Well, I'm not sure what your question is. What . . .

"[WASHINGTON'S COUNSEL:] As far as investigating the 500 cases or so that they said that they have at a time, you just found that to be unnecessary based on what you had for information?

"[COLGAN:] I don't know how we'd ever physically do it."

6

Washington argues this testimony was a "clear admission [Colgan] didn't even know how he would proceed on the equal protection claim." He asserts the record "establishes that Colgan made no efforts to pursue or even investigate the selective prosecution/equal protection defense."

Kansas courts have recognized selective prosecution as a valid defense to a criminal prosecution based on the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 528, 646 P.2d 1091 (1982); *State v. Robinson*, 55 Kan. App. 2d 464, 467, 417 P.3d 1087 (2018). Under K.S.A. 22-3208(3), this defense must be raised by a pretrial motion. 55 Kan. App. 2d at 467.

To succeed on a selective prosecution defense, a defendant must show "that others who are similarly situated are generally not prosecuted for conduct similar to the conduct for which the defendant is being prosecuted and that the defendant has been intentionally and purposefully singled out for prosecution on the basis of arbitrary or invidious criteria." *State v. Gant*, 288 Kan. 76, 85, 201 P.3d 673 (2009), *abrogated on other grounds by State v. Sampson*, 297 Kan. 288, 301 P.3d 276 (2013). The *Gant* court noted that a defendant cannot satisfy his burden of establishing prejudicial error based on selective prosecution by speculation alone, there must be "evidence in the record supporting the claim." *Gant*, 288 Kan. at 85.

In *Robinson*, this court defined "arbitrary or invidious criteria":

"By invidious, we generally mean that the State has discriminated based on some improper characteristic, such as race, religion, national origin, or sex. As for arbitrariness, 'a prosecutor's enforcement classification is "arbitrary" only if "people have been classified according to criteria which are clearly irrelevant to law enforcement purposes."' [Citations omitted.]" 55 Kan. App. 2d at 469.

7

In his original K.S.A. 60-1507 motion, Washington alleged "[s]everal inmates" had received disciplinary action for possessing cell phones or "large quantities of drugs" but were not "charged with a felony or referred to Leavenworth County for prosecution." The motion listed the names of 12 inmates, which was "a portion of the inmates who have received [disciplinary] reports based on cell phone and large quantities of drugs."

The K.S.A. 60-1507 motion did not reveal whether the 12 inmates had been criminally charged or prosecuted. But Washington did allege that "[t]wo inmates . . . were charged by the county prosecutor and then their cases dismissed at the State's request. These inmates were caught 'red handed.'" Washington included a "ROA Report" for the two inmates, and each report showed the State had charged the inmates, but ultimately requested to dismiss the charges. The reports contain no information about what crimes the inmates had been charged with, nor why the State requested dismissal.

Washington's motion also alleged that "[a]t the evidentiary hearing records can be presented to the court to show a vast difference between the inmates who have been charged and those who have not." A review of the evidentiary hearing shows there were no records presented to this effect. Washington did testify at the evidentiary hearing that he asked Colgan to pursue "potential selective prosecution issues" at his arraignment. When asked if he provided relevant information to Colgan to support this issue, Washington testified, "Yes. I stated that [the Kansas Department of Corrections] would sometimes pick and choose who they prosecute." Washington testified he "gave [Colgan] a few names" that were "[s]imilar to the ones" in his K.S.A. 60-1507 motion.

On cross-examination, the prosecutor questioned Washington about his selective prosecution allegations:

"[PROSECUTOR:]  And your selective prosecution argument, were you saying you—you yourself were being selectively prosecuted, you as a person or you—or—I don't quite understand.

"[WASHINGTON:]  I'mma say me as an individual because I was selected by the [Enforcement Apprehension and Investigation] from [Kansas Department of Corrections, Lansing Correctional Facility].

"[PROSECUTOR:]  You're aware that other people are prosecuted regularly from Lansing Correctional Facility; is that correct?

"[WASHINGTON:]  Yes. Out of a larger number.

"[PROSECUTOR:]  For cell phones, they are regularly; correct?

"[WASHINGTON:]  Over the last couple years, that—that has not been true. There—there's been plenty of people who have not been prosecuted.

"[PROSECUTOR:]  But there have been plenty of people that have been, have they?

"[WASHINGTON:]  Right.

"[PROSECUTOR:]  Okay. And, in fact, in the testimony that was presented, it was even said that the EAI present what they find to be the best case to the County Attorney's Office. Do you recall that?

"[WASHINGTON:]  I recall that, but I find it hard to believe.

"[PROSECUTOR:] But that's what you heard; correct?

"[WASHINGTON:]  Yes."

We now turn to the merits of Washington's claim. As the United States Supreme Court stated in *Strickland*:  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. United States*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffectiveness based on this rule, Washington needed to show that Colgan's decision not to investigate his selective prosecution claim was unreasonable under the circumstances.

Given the standard for establishing selective prosecution and the limited evidence provided by Washington to support the claim, we find that Washington has not shown it

was unreasonable for Colgan to not investigate selective prosecution as a defense on the merits. Although Washington offered some evidence to support his claim, the evidence only showed that Washington knew of some inmates that may have been disciplined for possessing contraband but were not prosecuted by the State. Washington made no claim that he had been "intentionally and purposely singled out for prosecution on the basis of arbitrary and invidious criteria." *Gant*, 288 Kan. at 85.

The State, on the other hand, presented evidence that it was reasonable for Colgan to not investigate the selective prosecution claim. Washington testified that he knew that "plenty of people" had been prosecuted for possessing cell phones. Colgan testified he thought the decision about who would be prosecuted for contraband depended on whether the evidence "is strong or sufficient." This evidence shows that Washington and Colgan were aware of other cell phone cases that had been prosecuted and had at least some idea of the criteria the State used to decide which cases to prosecute. Giving deference to Colgan's judgment, it was reasonable for him to not investigate selective prosecution.

To sum up, Washington failed to show that Colgan's performance was deficient under the circumstances. Although we could end our analysis here, we also observe that Washington failed to establish the prejudice prong of his ineffective assistance of counsel claim. In his brief, Washington makes only the conclusory claim that "he was prejudiced by Colgan's lack of investigation/pursuit of this [selective prosecution] defense because it is purely a legal defense which would have been dispositive." But in district court, he presented no evidence to show that his selective prosecution claim would have led to the dismissal of the charge or even led to a lesser sentence on the departure motion, and he develops no such argument on appeal. Because Washington fails to show any prejudice, he cannot prevail on his ineffective assistance of counsel claim. Thus, we conclude the district court did not err in denying Washington's K.S.A. 60-1507 motion.

Affirmed.

10